OWENS, J.
¶ 1 At issue here is the constitutionality of sentencing juvenile offenders to life in prison without the possibility of parole or early release. The State appeals a Court of Appeals, Division Two decision holding that the provision of our state's Miller[1] -fix statute that allows 16- and 17-year-olds to be sentenced to life without parole violates the Washington Constitution's ban on cruel punishment. Brian Bassett, recently resentenced to life without parole under the Miller -fix statute, argued at the Court of Appeals that juvenile life without parole is categorically unconstitutional. The court adopted the categorical approach, rather than our traditional Fain proportionality *346 test, and found that sentencing juvenile offenders to life without parole or early release constituted cruel punishment. State v. Bassett, 198 Wash.App. 714, 744, 394 P.3d 430 (2017) (published in part); State v. Fain, 94 Wash.2d 387, 617 P.2d 720 (1980). We affirm the Court of Appeals' decision and hold that sentencing juvenile offenders to life without parole or early release constitutes cruel punishment and therefore is unconstitutional under article I, section 14 of the Washington Constitution.
PROCEDURAL AND FACTUAL BACKGROUND
¶ 2 When Brian Bassett was 16 years old, he was living in a "shack" with Nicholaus McDonald after Bassett's parents " 'kicked [him] out' " of their home. State v. Bassett, noted at 94 Wash.App. 1017, 1999 WL 100872, at *1. With McDonald's assistance, Bassett snuck back into his home and shot his mother and father. Id. His brother was drowned in the bathtub, an act that McDonald initially confessed to but later blamed on Bassett at trial. State v. McDonald, 138 Wash.2d 680, 684, 981 P.2d 443 (1999). Bassett was convicted of three counts of aggravated first degree murder for the deaths of his mother, father, and brother. The judge commented that Bassett, still a child, was "a walking advertisement" for the death penalty and sentenced him to three consecutive terms of life in prison without the possibility of parole. Clerk's Papers at 19. At this time, 1996, life without parole was the mandatory sentence under our state statute. Former RCW 10.95.030 (1993).
¶ 3 After nearly two decades in prison, Bassett had another chance at sentencing in light of the Supreme Court's Miller decision. 567 U.S. 460, 132 S.Ct. 2455. In Miller, the Court held that mandatory juvenile life without parole sentences were unconstitutional under the Eighth Amendment to the United States Constitution. Id. at 479, 132 S.Ct. 2455. It reasoned that because a mandatory juvenile life without parole scheme did not consider the nature of youth and "children's diminished culpability and heightened capacity for change," it "poses too great a risk of disproportionate punishment." Id. It noted that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." Id. This decision is one from a line of cases wherein the Court curtailed states from imposing the harshest punishments against juveniles. See Montgomery v. Louisiana, --- U.S. ----, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016) (holding that Miller announced a new substantive constitutional rule that was retroactive); Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (barring life without parole sentences for juveniles convicted of nonhomicide offenses); Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (barring capital punishment for juvenile offenders).
¶ 4 In response to Miller, our state legislature enacted what is referred to as the Miller -fix statute. RCW 10.95.030. It requires sentencing courts to consider the Miller factors before sentencing a 16- or 17-year-old convicted of aggravated first degree murder to life without parole. Id. The statute provides that "the court must take into account mitigating factors that account for the diminished culpability of youth as provided in Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) including, but not limited to, the age of the individual, the youth's childhood and life experience, the degree of responsibility the youth was capable of exercising, and the youth's chances of becoming rehabilitated." RCW 10.95.030(3)(b). The statute mandated that individuals who had been sentenced to juvenile life without parole under the former mandatory scheme, such as Bassett, be resentenced under this new statute. RCW 10.95.035.
¶ 5 Bassett, at 35 years old, appeared for resentencing pursuant to the Miller -fix statute in 2015. Bassett requested three concurrent 25-year sentences and submitted over 100 pages of mitigation documentation, including evidence that he had been rehabilitated since his days as a teenager.
¶ 6 A pediatric psychologist who treated Bassett prior to the murders shed light on Bassett's childhood and life experience. He testified that Bassett had suffered from an adjustment disorder, struggling to cope effectively with the stressors of homelessness *347 and his strained relationship with his parents. The psychologist testified that during a family counseling session, Bassett attempted to reconcile with his parents, expressing a desire to come back home, but his parents rejected the idea. Bassett addressed the court and stated that at the time of the crimes he was unable to "comprehend the totality" and "see the long-term consequences of [his] actions." Verbatim Report of Proceedings (VRP) at 79. He said that when he was taken to jail on suspicion of murdering his parents, his first thoughts were "how much trouble [he] was going to be in when [his] parents learned that [he] was there in jail." VRP at 79-80.
¶ 7 Bassett also submitted significant evidence demonstrating how he has matured emotionally and behaviorally. He successfully completed courses examining stress and family violence in order to, as his brief states, "better understand his crimes." Br. of Resp't at 3 n.6. He has not had any prison violations since 2003, and the Department of Corrections classified him as a moderate-to-low security risk. He earned his GED (general equivalency diploma) and a full tuition scholarship for college, and was on the Edmonds Community College honor roll. Many letters from Bassett's supporters stated that he serves as a mentor to other men in prison. He married Joanne Pfeifer in 2010 after premarital counseling.
¶ 8 The State did not present any evidence rebutting Bassett's mitigating information. The sentencing judge rejected most of the mitigation evidence and imposed three consecutive life without parole sentences.
¶ 9 Bassett appealed, arguing, among other things, that Washington's Miller - Fix statute violated article I, section 14 because life without parole was categorically a cruel punishment for juvenile offenders. Bassett, 198 Wash.App. 714, 394 P.3d 430. The State did not address this argument in its briefing or at oral argument, and so the court ordered the State to file a supplemental brief responding to this argument.
¶ 10 The Court of Appeals held in the published portion of its opinion that juvenile life without parole was categorically unconstitutional under article I, section 14. Id. at 744, 394 P.3d 430. The court came to this conclusion by adopting the categorical bar analysis, a framework used by the United States Supreme Court and, most recently, by the Iowa Supreme Court to assess the categorical challenges against juvenile sentences. Id. (referencing Graham, 560 U.S. at 82, 130 S.Ct. 2011 ; State v. Sweet, 879 N.W.2d 811 (Iowa 2016) ). In the court's unpublished portion of the opinion, it dismissed Bassett's remaining arguments, including his claim that the sentencing court erred in applying the Miller factors. Bassett , No. 4725-1-II, slip op. at30-36 (Wash. Ct. App. Apr. 25, 2017) (unpublished), http://www.courts.wa.gov/opinions/.
¶ 11 The State petitioned our court for review, arguing that the Court of Appeals' decision "ignore[d] the history of juvenile sentencing in Washington and abandon[ed] [ Fain, ] Washington's long-standing framework for evaluating cruel punishment under the state constitution[,] ... in favor of the analysis of a foreign state court." Pet. for Review at 11-12. We accepted review of the State's petition and denied review of the issues raised by Bassett in his cross petition for review. State v. Bassett, 189 Wash.2d 1008, 402 P.3d 827 (2017).
ISSUES
I. Is article I, section 14 of the Washington Constitution more protective than the Eighth Amendment to the United States Constitution?
II. Should this court apply the categorical bar analysis or the Fain proportionality test to this constitutional challenge?
III. Under the categorical bar analysis, does a juvenile life without parole sentence violate article I, section 14 of the Washington Constitution ?
IV. Under the Fain proportionality test, does a juvenile life without parole sentence violate article I, section 14 of the Washington Constitution ?
ANALYSIS
¶ 12 We must determine whether the Washington Constitution's ban on "cruel punishment"
*348 prohibits sentencing juveniles to life without parole, rendering RCW 10.95.030(3)(a)(ii) unconstitutional. WASH. CONST. art. I, § 14. This subsection of the Miller -fix statute provides that
[a]ny person convicted of the crime of aggravated first degree murder for an offense committed when the person is at least sixteen years old but less than eighteen years old shall be sentenced to a maximum term of life imprisonment and a minimum term of total confinement of no less than twenty-five years. A minimum term of life may be imposed, in which case the person will be ineligible for parole or early release.
RCW 10.95.030(3)(a)(ii) (emphasis added). As the last sentence explains, when a court imposes a maximum term of life and a minimum term of life, the sentence becomes a life sentence without parole or early release.
¶ 13 We review a statute's constitutionality, like questions of law, de novo. State v. Hunley, 175 Wash.2d 901, 908, 287 P.3d 584 (2012). We presume statutes are constitutional, and Bassett has the burden to prove otherwise beyond a reasonable doubt. Id.
¶ 14 The State argues that the Court of Appeals "subverted the constitutional authority of a duly-elected legislature to fix punishments for criminal offenses" by holding juvenile life without parole unconstitutional. Revised Suppl. Br. of Pet'r at 18-20. It argues that the legislature had the opportunity to do away with juvenile life without parole after Miller and chose not to do so. Id. While the legislature surely is responsible for enacting appropriate sentences, this "authority is ultimately circumscribed by the constitutional mandate forbidding cruel punishment." Fain, 94 Wash.2d at 402, 617 P.2d 720. And as we have said before, while this constitutional decision "is not one which we assume eagerly, ... we do not shrink from our responsibility." Id.
I. Under Gunwall, Article I, Section 14 Is More Protective Than the Eighth Amendment
¶ 15 Our first step is to determine whether article I, section 14 of the Washington Constitution is more protective than its federal counterpart, the Eighth Amendment. The State argues that we must conduct a Gunwall analysis in order to answer this question. State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986). Bassett argues that our prior case law has consistently held that article I, section 14 is more protective.
¶ 16 This court has "repeated[ly] recogni[zed] that the Washington State Constitution's cruel punishment clause often provides greater protection than the Eighth Amendment."[2] State v. Roberts, 142 Wash.2d 471, 506, 14 P.3d 713 (2000). However, there are four instances where we said this is not always so. First, in Dodd, we found that article I, section 14 was not more protective than the Eighth Amendment. State v. Dodd, 120 Wash.2d 1, 21, 838 P.2d 86 (1992). A few years later, we recognized that Dodd had unique facts as the capital defendant wanted to waive general review in hopes of a speedier execution and thus the "ruling in Dodd is limited to the facts of that case." State v. Thorne, 129 Wash.2d 736, 772 n.10, 921 P.2d 514 (1996) ; see also State v. Manussier, 129 Wash.2d 652, 674 n.89, 921 P.2d 473 (1996). Despite finding Dodd unique, we cited the decision in three death penalty cases for the proposition that the Gunwall factors do not always demand that we interpret article I, section 14 more broadly than the Eighth Amendment. In re Pers. Restraint of Cross, 180 Wash.2d 664, 731, 327 P.3d 660 (2014) ; State v. Yates, 161 Wash.2d 714, 792, 168 P.3d 359 (2007) ; State v. Gentry, 125 Wash.2d 570, 631-32, 888 P.2d 1105 (1995). With our inconsistent precedent, conducting the Gunwall analysis for this particular context is the prudent starting point for this case.
*349 ¶ 17 Moreover, we recently indicated that the Gunwall analysis should be conducted in the specific context of challenges to juvenile life without parole sentences. In Ramos, we agreed with Ramos that our court has repeatedly found that article I, section 14 is more protective than the Eighth Amendment. State v. Ramos, 187 Wash.2d 420, 453-54, 387 P.3d 650, cert. denied , --- U.S. ----, 138 S.Ct. 467, 199 L.Ed.2d 355 (2017). Yet we noted that "[e]ven where it is already established that the Washington Constitution may provide enhanced protections on a general topic, parties are still required to explain why enhanced protections are appropriate in specific applications." Id. at 454, 387 P.3d 650.
¶ 18 Thus, we use the six nonexclusive criteria from Gunwall to determine whether the Washington Constitution's ban on cruel punishment should be considered as extending broader rights to its citizens than the Eighth Amendment: (1) the textual language of the state constitution, (2) differences in the texts of parallel provisions of the federal and state constitutions, (3) state constitutional and common law history, (4) preexisting state law, (5) structural differences between the federal and state constitutions, and (6) matters of particular state interest or local concern. Gunwall, 106 Wash.2d at 61-62, 720 P.2d 808.
¶ 19 The first three factors provide cogent grounds for finding article I, section 14 more protective than the Eighth Amendment. The Washington Constitution provides that "[e]xcessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted." WASH. CONST. art. I, § 14. This provision is similar to the Eighth Amendment but omits the words "and unusual." U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). This difference indicates that " Article 1, section 14, on its face, may offer greater protection than the Eighth Amendment, because it prohibits conduct that is merely cruel; it does not require that the conduct be both cruel and unusual." Dodd, 120 Wash.2d at 21, 838 P.2d 86. "The historical evidence reveals that the framers of [Wash.] Const. art. 1, § 14 were of the view that the word 'cruel' sufficiently expressed their intent, and refused to adopt an amendment inserting the word 'unusual'." Fain, 94 Wash.2d at 393, 617 P.2d 720 (citing The Journal of the Washington State Constitutional Convention: 1889, at 501-02 (Beverly Paulik Rosenow ed. 1962) ). Thus, these factors weigh in favor of interpreting article I, section 14 as affording broader rights than the Eighth Amendment.
¶ 20 The fourth factor asks us to consider how "established bodies of state law, including statutory law, may also bear on the granting of distinctive state constitutional rights." Gunwall, 106 Wash.2d at 61, 720 P.2d 808. The State argues that this factor does not favor independent state constitutional analysis, stretching its memory back to the way our justice system treated children over 100 years ago and ignoring our trend of affording more protections for juveniles. First, it points out that at statehood, we had no juvenile courts and that our constitution is silent on juveniles. It cites two decisions wherein our court approved death sentences for children, no doubt now an unconstitutional and shameful practice, and notes that one of the defendants was executed when he was 17 years old. Our state's execution of a child, Walter Dubuc, in 1932, is not a guiding light for interpreting our constitution's ban on cruel punishment today in 2018. "We are not impressed by the implicit suggestion that the state of Washington should regress to territorial days and adopt a system where juveniles ... are afforded no special protections." State v. Schaaf, 109 Wash.2d 1, 14-15, 743 P.2d 240 (1987). It is more instructive to look at how our jurisprudence on juvenile sentencing has evolved to ensure greater protections for children.
¶ 21 This court has consistently applied the Miller principle that "children are different." Miller, 567 U.S. at 481, 132 S.Ct. 2455. In O'Dell, we used the psychological and neurological studies discussed in Miller, Roper, and Graham to hold that age may well mitigate a defendant's culpability, even if the defendant is slightly older than 18. State v. O'Dell, 183 Wash.2d 680, 691-96, 358 P.3d 359 (2015). In Ramos, we noted that Miller 's *350 reasoning applies not only to literal juvenile life without parole sentences but also to de facto juvenile life without parole sentences. 187 Wash.2d at 438, 387 P.3d 650. This court has also applied Miller 's reasoning to hold that "sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant" and "must have discretion to impose any sentence below the otherwise applicable SRA range and/or sentence enhancements." State v. Houston-Sconiers, 188 Wash.2d 1, 21, 391 P.3d 409 (2017).
¶ 22 Our legislature has also demonstrated its "ongoing concern for juvenile justice issues." Ramos, 187 Wash.2d at 446, 387 P.3d 650 (citing RCW 9.94A.540(3) (eliminating mandatory minimum sentences for juvenile offenders tried as adults), .730 (expanding parole eligibility for juvenile offenders tried as adults) ). After Miller, the legislature did away with life without parole sentences for children age 15 and under. RCW 10.95.030(3)(a)(i). Thus, we see that established bodies of state law, both statutory and case-based, recognize that children warrant special protections in sentencing. This weighs in favor of interpreting article I, section 14 more broadly than the Eighth Amendment.
¶ 23 The fifth Gunwall factor "will always point toward pursuing an independent state constitutional analysis because the federal constitution is a grant of power from the states, while the state constitution represents a limitation of the State's power." State v. Young, 123 Wash.2d 173, 180, 867 P.2d 593 (1994).
¶ 24 The sixth factor also weighs in favor of interpreting article I, section 14 more broadly than the Eighth Amendment. While there may be some benefit to national uniformity for sentencing children, it is outweighed by the state policy considerations discussed under the fourth factor, to grant juveniles special sentencing protections where appropriate. See Gunwall, 106 Wash.2d at 67, 720 P.2d 808 (explaining that the discussion of the fourth factor may pertain to the sixth factor).
¶ 25 The six Gunwall factors all direct us toward interpreting article I, section 14 more broadly than the Eighth Amendment. Thus, we hold that in the context of juvenile sentencing, article I, section 14 provides greater protection than the Eighth Amendment.
II. The Categorical Bar Analysis Better Considers the Characteristics of the Offender Class Than the Fain Test
¶ 26 The State argues that the Court of Appeals wrongly abandoned our traditional Fain proportionality analysis in favor of the categorical bar analysis, rooted in United States Supreme Court jurisprudence. The State is correct that our court has used Fain to analyze proportionality challenges under article I, section 14. State v. Witherspoon, 180 Wash.2d 875, 887, 329 P.3d 888 (2014) ; State v. Davis, 175 Wash.2d 287, 344, 290 P.3d 43 (2012)abrogated by State v. Gregory , --- Wash.2d ----, 427 P.3d 621 (2018), http://www.courts.wa.gov/opinions/pdf/880867.pdf; Manussier, 129 Wash.2d at 676-77, 921 P.2d 473. However, we are not bound to apply Fain to every cruel punishment claim under article I, section 14. While Fain is the traditional test, it has been used for claims that a sentence was grossly disproportionate, not that a sentence was categorically unconstitutional based on the nature of the juvenile offender class. Thus, this unique type of cruel punishment claim is distinguishable from our precedent adopting Fain, and we are free to choose the most appropriate framework for this case. See Ramos, 187 Wash.2d at 454-55, 387 P.3d 650 (explaining that we do not foreclose the possibility of following the Iowa Supreme Court's lead of adopting a categorical rule).
¶ 27 The Fain proportionality test considers (1) the nature of the offense, (2) the legislative purpose behind the statute, (3) the punishment the defendant would have received in other jurisdictions, and (4) the punishment meted out for other offenses in the same jurisdiction. Fain, 94 Wash.2d at 397, 617 P.2d 720. The categorical bar analysis considers (1) whether there is objective indicia of a national consensus against the sentencing practice at issue and (2) the court's own independent judgment based on " 'the standards elaborated by controlling precedents and by the [c]ourt's own understanding *351 and interpretation of the [cruel punishment provision]'s text, history, ... and purpose.' " Graham, 560 U.S. at 61, 130 S.Ct. 2011 (quoting Kennedy v. Louisiana, 554 U.S. 407, 421, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008) ).
¶ 28 The United States Supreme Court's jurisprudence on the categorical bar analysis is helpful in understanding why Fain should not be adopted here. The Fain framework does not include significant consideration of the characteristics of the offender class. Instead, it weighs the offense with the punishment. This makes it ill suited to analyze Bassett's claim because he asserts a categorical challenge based on the characteristics of the offender class-children. The categorical bar analysis, on the other hand, directs us to consider the nature of children. Graham, 560 U.S. at 67, 130 S.Ct. 2011. The categorical approach "requires consideration of the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question" and whether the sentence "serves legitimate penological goals." Id. Issues of culpability, the severity of the punishment, and whether penological goals are served all allow the court to include youth-specific reasoning into the analysis.
¶ 29 The United States Supreme Court developed the categorical framework to address categorical cruel punishment claims based on the nature of the offense or the characteristics of the offender. Graham , 560 U.S. at 59-62, 130 S.Ct. 2011. In Graham, the Court explained that a framework that compares "the severity of the penalty and the gravity of the crime," which is what Fain does, does not advance an analysis of a claim that challenges "a particular type of sentence as it applies to an entire class of offenders who have committed a range of crimes." Id. at 61, 130 S.Ct. 2011. Our circumstance differs slightly as we are assessing life without parole for juveniles convicted of the same crime. However, because Bassett's categorical cruel punishment claim is based on a particular type of sentence as it applies to an entire class of offenders-16- and 17-year-olds-a test that does not consider youthful characteristics should not be adopted. Moreover, adopting a framework that considers the characteristics of youth is in line with the Miller reasoning, which we have adopted. See supra Part I (discussion of the fourth Gunwall factor).
¶ 30 Understanding why we created the Fain test helps us appreciate why it is appropriate to adopt the categorical bar analysis for Bassett's constitutional challenge. The Fourth Circuit adopted the four-factor test when considering whether a life sentence was disproportionate to the underlying offenses in a habitual criminal case. Hart v. Coiner , 483 F.2d 136 (4th Cir. 1973). In Fain, we noted that this was the first time our court was expressly adopting proportionality principles and that the four factors in Hart were useful in analyzing a cruel punishment claim. Fain, 94 Wash.2d at 397, 617 P.2d 720 (noting that the factor on legislative purpose should be employed only with caution and was not necessary for Fain's case ( id. at 401, 617 P.2d 720 n.7 ) ). Thus, in Fain, we adopted a framework from a nonbinding court to analyze proportionality because it fit the challenge Fain brought-that Fain's sentence was cruel punishment because it was grossly disproportionate to his crimes-and the particular statute we were assessing-a habitual criminal statute. Similarly, here, the categorical bar analysis fits the challenge Bassett brings-that life without parole is a categorically unconstitutional sentence for juveniles-and the statute we are assessing-a juvenile life without parole statute.
¶ 31 In conclusion, though we have adopted Fain to assess other cruel punishment claims under our state constitution, it is inappropriate to assess Bassett's categorical challenge, which is based on the characteristics of children. We are free to evolve our state constitutional framework as novel issues arise to ensure the most appropriate factors are considered. Because the categorical bar analysis allows us to consider the characteristics of youth, the crux of this categorical challenge, we adopt it in this instance. This holding does not disturb our Fain decision.
*352 III. Under the Categorical Bar Analysis, Sentencing a Juvenile Offender to Life without Parole Constitutes Cruel Punishment
a. There Is a Strong and Rapid Trend of Abandoning Juvenile Life without Parole Sentences
¶ 32 The first step in the categorical bar analysis is to determine whether there is a national consensus against sentencing juveniles to life without parole by looking at " 'objective indicia of society's standards, as expressed in legislative enactments and state practice.' " Graham, 560 U.S. at 61, 130 S.Ct. 2011 (quoting Roper, 543 U.S. at 563, 125 S.Ct. 1183 ). " '[T]he clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislatures.' " Id. at 62, 130 S.Ct. 2011 (internal quotation marks omitted) (quoting Atkins v. Virginia, 536 U.S. 304, 312, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (applying the categorical bar analysis to find that a person with intellectual disabilities cannot be sentenced to death) ). "It is not so much the number of these States that is significant, but the consistency of the direction of change." Atkins, 536 U.S. at 315, 122 S.Ct. 2242.
¶ 33 Bassett is correct that the direction of change in this country is unmistakably and steadily moving toward abandoning the practice of putting child offenders in prison for their entire lives. As of January 2018, 20 states and the District of Columbia have abolished life without parole for juveniles.[3] This trend has occurred rapidly since Miller, before which only 4 states banned juvenile life without parole.[4] Additionally, 4 states no longer have anyone serving a life without parole sentence under their respective statutes.[5] Other states have limited the offenses that qualify for juvenile life without parole.[6] Lastly, several states moved to provide parole eligibility to those sentenced to juvenile life without parole pre- Miller .[7] There is a clear trend of states rapidly abandoning or curtailing juvenile life without parole sentences. While this step is not dispositive, it weighs in favor of finding that sentencing juvenile offenders to life without parole is cruel punishment under article I, section 14. See Graham, 560 U.S. at 80, 130 S.Ct. 2011.
b. The Exercise of Independent Judgment Weighs in Favor of Finding Juvenile Life without Parole Cruel Punishment
¶ 34 The second step in the categorical bar analysis, the judicial exercise of independent judgment, requires consideration of "the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question" and "whether the challenged sentencing practice serves legitimate penological goals." Graham , 560 U.S. at 67, 130 S.Ct. 2011.
¶ 35 The United States Supreme Court and this court have concluded that children are less criminally culpable than adults. As we have stated, we now "have the benefit of the studies underlying Miller, Roper, and Graham ... that establish a clear *353 connection between youth and decreased moral culpability for criminal conduct." O'Dell, 183 Wash.2d at 695, 358 P.3d 359 (citing the findings in Miller that a child's "transient rashness, proclivity for risk, and inability to assess consequences" lessen their culpability ( Miller, 567 U.S. at 472, 132 S.Ct. 2455 ) ). "As compared to adults, juveniles have a Tack of maturity and an underdeveloped sense of responsibility'; they 'are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure'; and their characters are 'not as well formed.' " Graham, 560 U.S. at 68, 130 S.Ct. 2011 (internal quotation marks omitted) (quoting Roper, 543 U.S. at 569-70, 125 S.Ct. 1183 ). Because children have "lessened culpability they are less deserving of the most severe punishments." Id. Yet the Miller - fix statute allows children to be sentenced to the extremely severe punishment of life without parole.
¶ 36 The United States Supreme Court has recognized the harsh nature of sentencing a juvenile to die in prison. The Court explained that life without parole "alters the offender's life by a forfeiture that is irrevocable" and "deprives [individuals] of the most basic liberties without giving hope of restoration." Id. at 69-70, 130 S.Ct. 2011. The sentence is "especially harsh" for children, who will "on average serve more years and a greater percentage of [their] li[ves] in prison than an adult offender." Id. at 70, 130 S.Ct. 2011. The punishment " 'means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the child], he will remain in prison for the rest of his days.' " Id. (quoting Naovarath v. State, 105 Nev. 525, 526, 779 P.2d 944 (1989) ).
¶ 37 Lastly, we look to whether the penological goals of retribution, deterrence, incapacitation, and rehabilitation are served by this sentence. " '[T]he distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes. ' " Ramos, 187 Wash.2d at 438, 387 P.3d 650 (quoting Miller, 567 U.S. at 472, 132 S.Ct. 2455 ). First, the case for retribution is weakened for children because " '[t]he heart of the retribution rationale' relates to an offender's blameworthiness" and children have diminished culpability. Miller, 567 U.S. at 472, 132 S.Ct. 2455 (alteration in original) (internal quotation marks omitted) (quoting Graham, 560 U.S. at 71-74, 130 S.Ct. 2011 ). "Nor can deterrence do the work in this context, because 'the same characteristics that render juveniles less culpable than adults'-their immaturity, recklessness, and impetuosity-make them less likely to consider potential punishment." Id. (internal quotation marks omitted) (quoting Graham, 560 U.S. at 72, 130 S.Ct. 2011 ). Rehabilitation is not supported by a juvenile life without parole sentence because the sentence " 'forswears altogether the rehabilitative ideal.' " Id. at 473, 132 S.Ct. 2455 (quoting Graham, 560 U.S. at 74, 130 S.Ct. 2011 ).
¶ 38 Lastly, incapacitation is not well served by sentencing juveniles to life without parole because "[d]eciding that a 'juvenile offender forever will be a danger to society' would require 'mak[ing] a judgment that [he] is incorrigible'-but 'incorrigibility is inconsistent with youth.' " Id. at 472-73, 132 S.Ct. 2455 (second and third alterations in original) (internal quotation marks omitted) (quoting Graham, 560 U.S. at 72-73, 130 S.Ct. 2011 ). The penological goal of incapacitation is especially concerning given the fact that the sentence "makes an irrevocable judgment about that person[ ]" that is at odds with what we know about children's capacity for change. Graham, 560 U.S. at 74, 130 S.Ct. 2011. We have recognized that children have " 'diminished culpability and heightened capacity for change.' " Ramos, 187 Wash.2d at 444, 387 P.3d 650 (quoting Miller, 567 U.S. at 479, 132 S.Ct. 2455 ). While the Miller -fix statute requires sentencing courts to consider "youth's chances of becoming rehabilitated," it is extremely difficult to make that determination. RCW 10.95.030(3)(b). "It is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." Roper, 543 U.S. at 573, 125 S.Ct. 1183.
*354 ¶ 39 Bassett's resentencing hearing provides an illustration of the imprecise and subjective judgments a sentencing court could make regarding transient immaturity and irreparable corruption. Some judges may find an infraction-free record from the last 12 years evidence of rehabilitation, but Bassett's judge concluded it didn't "carr[y] much weight" because "prisoners have some incentive to follow the rules." VRP at 90. He also found that Bassett's academic achievements were "less evidence of rehabilitation and more evidence that ... he is simply doing things to make his time in prison more tolerable." Id. at 91, 130 S.Ct. 2011. The judge concluded that Bassett's homelessness was evidence that he was more mature than "kids who are not in that situation." Id. at 89, 130 S.Ct. 2011. This conclusion could have easily gone the other way, with a judge finding that the instability and insecurity of homelessness caused Bassett to have less control over his emotions and actions. Of course, sentencing courts use their expert discretion in many aspects of sentencing. However, in this situation, given the difficulty even expert psychologists have in determining whether a person is irreparably corrupt and the extremely high stakes of the decision-the difference between living out the rest of their lives in prison or having a chance to return to society-this type of discretion produces the unacceptable risk that children undeserving of a life without parole sentence will receive one.
¶ 40 Under the two-pronged categorical bar analysis, we find that states are rapidly abandoning juvenile life without parole sentences, children are less criminally culpable than adults, and the characteristics of youth do not support the penological goals of a life without parole sentence. Thus, we hold that sentencing juvenile offenders to life without parole or early release is cruel punishment and therefore RCW 10.95.030(3)(a)(ii) is unconstitutional under article I, section 14.
IV. Even under the Fain Proportionality Test, Sentencing a Juvenile Offender to Life without Parole Constitutes Cruel Punishment
¶ 41 Even if this court applied the Fain proportionality test here, we would still find that sentencing a juvenile offender to life without parole violates article I, section 14. First, looking to the nature of the offense, there is no doubt that aggravated first degree murder is the most serious criminal offense. The second factor asks us to look at the legislative purpose behind the Miller - fix statute. According to the legislature, the purpose is to require sentencing courts to "take into account mitigating factors that account for the diminished culpability of youth as provided in Miller. " LAWS OF 2014, ch. 130, § 9(3)(b). Taken together, these factors show that while aggravated murder warrants a serious punishment, youth convicted of the offense have the special protections from the Miller -fix statute requiring sentencing courts to consider children's diminished culpability.
¶ 42 The third factor, the punishment juveniles would receive in other jurisdictions, weighs in favor of finding juvenile life without parole sentences cruel punishment and unconstitutional. See supra Section III.a. Lastly, the fourth factor directs us to look at the punishment juveniles would receive for other offenses in the same jurisdiction. Juveniles in Washington can be sentenced to life without parole only if they are convicted of aggravated first degree murder. RCW 10.95.030. If a juvenile is convicted of any other crime or combination of crimes, he or she would be eligible for release after 20 years, unless he or she has committed a disqualifying infraction in the prior year. RCW 9.94A.730(1). This extreme jump from eligibility for release after 20 years to life without parole shows the extreme severity of the sentence in the broader context of juvenile sentencing. Thus, it weighs in favor of finding life without parole a disproportionate and cruel sentence as applied to juvenile offenders.
¶ 43 This test shows us that while the offense is serious, the punishment is extreme in comparison to the sentence other jurisdictions would impose and the sentence Washington would impose for other crimes. Even if we applied the Fain test to Bassett's categorical constitutional challenge, life without parole is a disproportionate sentence for juvenile offenders, and therefore, *355 RCW 10.95.030(3)(a)(ii) is unconstitutional under article I, section 14.
CONCLUSION
¶ 44 We hold that sentencing juvenile offenders to life without parole or early release constitutes cruel punishment and, therefore, RCW 10.95.030(3)(a)(ii) is unconstitutional, insofar as it allows such a sentence, under article I, section 14 of Washington Constitution. We affirm the Court of Appeals' decision to remand to the trial court for resentencing in accordance with this opinion. On remand, the trial court may not impose a minimum term of life as it would result in a life without parole sentence.
WE CONCUR:
Wiggins, J.
González, J.
Gordon McCloud, J.
Yu, J.

Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).

See State v. Witherspoon, 180 Wash.2d 875, 887, 329 P.3d 888 (2014) ; State v. Manussier, 129 Wash.2d 652, 674, 921 P.2d 473 (1996) ; State v. Rivers, 129 Wash.2d 697, 712, 921 P.2d 495 (1996) ; State v. Thorne, 129 Wash.2d 736, 772-73, 921 P.2d 514 (1996), abrogated on other grounds by Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) ; State v. Bartholomew, 101 Wash.2d 631, 639-40, 683 P.2d 1079 (1984) ; Fain, 94 Wash.2d at 392-93, 617 P.2d 720.

Alaska Stat. § 12.55.015(g) ; Ark. Code Ann. § 5-4-108 ; Cal. Penal Code §§ 3051, 4801 ; Colo.rev. Stat. §§ 17-22.5-104(2)(d)(IV), 18-1.3-401(4)(b)(I) ; Conn. Gen. Stat. § 54-125a(f) ; Del. Code Ann. tit. 11, §§ 4209A, 4204A(d) ; D.C. Code § 22-2104(a) ; Haw. Rev. Stat. § 706-656 ; State v. Sweet, 879 N.W.2d 811 (Iowa 2016) ; Kan. Stat. Ann. § 21-6618 ; Ky. Rev. Stat. Ann. § 640.040(1) ; Diatchenko v. Dist. Att'y, 466 Mass. 655, 674, 1 N.E.3d 270 (2013) ; Nev. Rev. Stat. § 176.025 ; N.J. Stat. Ann. § 2C:11-3 ; N.D. Cent. Code Ann. §§ 12.1-20-03(4), 12.1-32-13.1; S.D. Codified Laws § 22-6-1 ; Tex. Penal Code Ann. § 12.31 ; Utah Code Ann. § 76-3-209 ; Vt. Stat. Ann. tit. 13, § 7045 ; W. Va. Code Ann. § 61-11-23(a)(2) ; Wyo. Stat. Ann. § 6-2-101(b).

Alaska Stat. § 12.55.015(g) ; Colo. Rev. Stat. §§ 17-22.5-104(2)(d)(IV), 18-1.3-401(4)(b)(I) ; Kan. Stat. Ann. § 21-6618 ; Ky. Rev. Stat. Ann. § 640.040(1).

See Does Your State Still Use Life-without-Parole Sentences for Kids?, Campaign For Fair Sent'g of Youth (Feb. 1, 2018) https://www.fairsentencingofyouth.org/does-yourstate-use-juvenile-life-without-parole-jlwop/ [https://perma.cc/H3BW-YM3Y] (an update from February 2018, showing that Maine, New Mexico, New York, and Rhode Island do not use the sentence).

Fla. Stat. § 921.1402(2)(a) ; 18 PA. Cons. Stat. §§ 1102, 1102.1 ; N.C. Gen. Stat. §§ 15A-1340.19A, 15A-1340.19B, 15A-1340.19C.

Mo. Rev. Stat. § 558.047(1) ; Colo. Rev. Stat. § 18-1.3-401(4)(b) ; Jackson v. State, 883 N.W.2d 272 (Minn. 2016).