IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40325-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HORACIO MORALES PEREZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, A.C.J. — Horacio Morales Perez was sentenced to 220 months after pleading guilty to murder in the second degree, a crime he committed when he was 18 years old. He appeals his sentence, arguing that the constitutional protections that apply to juveniles sentenced in adult court should be extended to the sentencings of young adults. He contends the trial court in his case abused its discretion by failing to comply with these constitutional protections, failing to sue sponte inquire about the mitigating qualities of youth, and prohibiting his family from providing information during sentencing.

We reject his invitation to expand the constitutional protections afforded juveniles to young adults sentenced under the Sentencing Reform Act of 1987 (SRA), ch. 9.94A RCW. But we agree that under the provisions of the SRA, the trial court abused its

discretion by refusing to consider the lay testimony proffered by Morales Perez. We

reverse and remand for de novo resentencing.

BACKGROUND

Morales Perez was charged with second degree murder and drive-by shooting.

The State alleged that on March 23, 2022, while riding in the back seat of a car, Morales

Perez shot and killed Juan Diaz-Guerrero, a passenger in another car. Evidence

uncovered during the investigation demonstrated that Morales Perez intended to shoot the

driver of the other vehicle, "Hector," but shot Diaz-Guerrero instead.

After charges were filed, defense counsel requested a competency evaluation.

During the evaluation, Morales Perez reported that he received some assistance in school,

remaining in regular classes for the most part but participating in special education

services for reading. After completing the eleventh grade he did not graduate, claiming

pending charges interfered with his ability to complete school. Morales Perez also

reported experiencing a traumatic brain injury at 10 years of age. He reported ongoing

headaches attributable to the injury that seemed to be declining. The evaluator concluded

that the injury did not appear to affect his cognition. The evaluator diagnosed Morales

Perez with "Cannabis Use Disorder" and found Morales Perez competent to stand trial.

Approximately two years after being charged, Morales Perez pleaded guilty to the

second degree murder charge in exchange for the State's agreement to dismiss the drive-

by shooting charge and to not add a firearm enhancement or an additional charge. The

plea agreement did not include a sentencing recommendation, leaving the parties to argue over the sentence.

With an offender score of 0, Morales Perez's standard range was 123 to 220 months. The State argued for a sentence at the top of the standard range, 220 months, pointing to the seriousness of the crime, the impact on the victim's family and community, and the concessions made by the State as part of the plea agreement.

During sentencing, the court heard from two people. Diaz-Guerrero's mother provided a victim impact statement, and his cousin described how Diaz-Guerrero's death had devastated the family. Detective Jasmine Silver also provided information, asserting her belief that Morales Perez and his family had been deceptive during the investigation. She told the court that the family hid Morales Perez before he eventually turned himself in. In addition, although Morales Perez told police he threw the gun into an irrigation ditch, police were unable to recover the weapon. Finally, she pointed out that the murder was gang related and that other individuals in the car confessed that they were looking for Hector on the evening of the shooting.

Defense counsel asked for a sentence at the low end of the standard range, 123 months. In support of a lower sentence, counsel disputed some of the underlying allegations. He noted that, one month before the shooting, Hector had fired shots at the home of Morales Perez's sister. Then, several hours before the shooting, Morales Perez

and his friends had crossed paths with Hector, who pulled out a gun with a laser and pointed it at people.

Counsel also asked the court to consider Morales Perez's youth at the time of the crime, as well as the competency evaluation indicating that Morales Perez had suffered a traumatic brain injury as a child. Counsel noted that Morales Perez had cognitive limitations, and that he participated in special education in school before dropping out in the eleventh grade. Defense counsel did not address any of the mitigating factors of youth or explain how those factors contributed to the crime.

When counsel asked the court if someone from Morales Perez's family could speak, the court declined, indicating that it usually hears from the victim and law enforcement but not the defendant's family.

Morales Perez allocuted, apologizing to the family of the victim and expressing remorse for his actions.

Before announcing its sentence, the court indicated that it considered not only the goals of sentencing but also Morales Perez's youthfulness, age, and learning disabilities as well as the circumstances of the offense. The court did not explain whether and to what extent those factors contributed to the crime or the court's sentence. Ultimately, the court followed the State's recommendation and imposed a sentence of 220 months.

Morales Perez timely appealed.

4

ANALYSIS

A. *Juvenile Constitutional Protections do not Govern Young Adult Sentencing Under the SRA*

Juvenile sentencing is informed by constitutional principles recognizing that "'[c]hildren are different.'" *State v. Houston-Sconiers*, 188 Wn.2d 1, 8, 391 P.3d 409 (2017) (quoting *Miller v. Alabama*, 567 U.S. 460, 480, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)). *Houston-Sconiers* held that when punishing children convicted as adults, the Eighth Amendment to the United States Constitution requires consideration of the mitigating qualities of youth and discretion to set lower sentences to achieve proportionality. *Id*. at 19-21. In *State v. Bassett*, 192 Wn.2d 67, 82, 428 P.3d 343 (2018), our supreme court held that article I, section 14 provides greater protection than the Eighth Amendment in the juvenile context.

These constitutional protections carry procedural obligations for juvenile sentencing. Trial courts must elicit information on youth's mitigating qualities when there is no agreed sentence or the court intends not to follow one, even absent defense initiation. *In re Pers. Restraint of Domingo-Cornelio*, 196 Wn.2d 255, 268, 474 P.3d 524 (2020); *State v. Harris*, 4 Wn.3d 108, 122, 129, 559 P.3d 499 (2024) (if parties have not reached a plea agreement or the court does not intend to follow agreed recommendation for juvenile sentencing, the court "must call on the defendant and the State to answer its questions about mitigating or aggravating factors, if relevant, to determine whether

mitigation controls the court's sentencing decision."). Courts must also give meaningful consideration to youth and explain their reasoning on the record. *Domingo-Cornelio*, 196 Wn.2d at 268 ("silence does not constitute reasoning"); *State v. Rogers*, 17 Wn. App. 2d 466, 480, 487 P.3d 177 (2021) (upon finding that youth justifies an exceptional sentence for a juvenile offender, the court must explain its reasoning on the record) (citing RCW 9.94A.535).

By contrast, young adult sentencing is governed primarily by statute. In *State v. O'Dell*, the supreme court held that while age is not a per se mitigating factor under the SRA, youth may be a mitigating factor supporting an exceptional sentence under RCW 9.94A.535(1)(e) when a defendant shows youth impaired appreciation of consequences or the ability to conform his conduct to the law. 183 Wn.2d 680, 689, 358 P.3d 359 (2015). But *O'Dell* "was based solely on the Supreme Court's interpretation of the SRA and did not impose, as a constitutional mandate, a requirement that sentencing courts consider an adult offender's youthfulness before determining an appropriate sentence." *State v. Zwede*, 21 Wn. App. 2d 843, 860, 508 P.3d 1042 (2022).

The only constitutional constraint recognized thus far for young adults is *In re Personal Restraint of Monschke*, 197 Wn.2d 305, 482 P.3d 276 (2021) (plurality opinion), holding article I, section 14 prohibits mandatory life without parole for 18-, 19-, or 20-year-olds. But the holding in *Monschke* is narrow. In a subsequent case, the supreme court held that *Monschke* did not apply to a 380-month sentence for homicide by

abuse because the sentence was not mandatory or akin to life without parole (LWOP), was not for aggravated first degree murder, and the court exercised discretion. *In re Pers. Restraint of Kennedy*, 200 Wn.2d 1, 24, 513 P.3d 769 (2022). Likewise, in *In re Personal Restraint of Davis*, 200 Wn.2d 75, 83-84, 514 P.3d 653 (2022), the supreme court found *Monschke* inapplicable where the sentencing court retained discretion to consider youth as a mitigating factor.

Here, Morales Perez asks us to extend juvenile constitutional procedures— requiring court engagement and reasoned analysis of the *Miller* factors on the record, and an asserted requirement to weigh mitigation over retribution—to young-adult sentencing. He relies on *State v. Gilbert*, 193 Wn.2d 169, 176, 438 P.3d 133 (2019), and *State v. Haag*, 198 Wn.2d 309, 313, 495 P.3d 241 (2021), both addressing resentencing of juveniles originally sentenced to life without parole. He cites no authority extending those constitutional procedures to young adults who are not facing LWOP. We decline to do so.

### B. The SRA Requires Meaningful Consideration of Youthfulness When Requested, and Courts May Not Exclude Relevant Lay Testimony

Under the SRA, a defendant cannot appeal a standard range sentence. RCW 9.94A.585(1). But a defendant may challenge procedures employed at sentencing. *State v. Nevarez*, 24 Wn. App. 2d 56, 519 P.3d 252 (2022). And, "a defendant may appeal a standard range sentence if the sentencing court failed to comply with procedural

requirements of the SRA or constitutional requirements." *State v. Osman*, 157 Wn.2d 474, 481-82, 139 P.3d 334 (2006). Moreover, "[w]hen a defendant is 18 years old at the time of the crime, a sentencing judge abuses their discretion when they fail to consider youthfulness when requested." *State v. Ellis*, __ Wn.3d __, 579 P.3d 37, 42 (2025).

Under the SRA, a defendant bears the burden of proving mitigation and "explaining how his youthfulness mitigated his culpability." *Id*. at 44. Although mitigation packages and expert testimony can assist, "sophisticated evidence is not required." *Id*. at 43. Importantly, *Ellis* holds that the defendant may satisfy this burden through lay testimony, and the court must consider such testimony when proffered. *Id*. at 43.

Upon considering the mitigating evidence and arguments, the trial court retains discretion to determine whether the evidence supports a low-end standard range sentence, an exceptional sentence below the range, or neither. *Id*. If the court does impose a sentence outside the standard range, the court must state its reasons in written findings and conclusions. RCW 9.94A.535.

Here, Morales Perez was 18 years old at the time of the offense. He requested consideration of his youthfulness and sought a low-end standard range sentence. He proffered limited information (competency evaluation, special education, incomplete schooling, reported childhood brain injury) and asked the court to hear from his family. The court declined that request and imposed the high-end standard range sentence after

stating it had considered youthfulness, age, learning disabilities, and offense circumstances.

Under *Ellis*, the court's refusal to hear from Morales Perez's family was an abuse of discretion. A defendant's lay witnesses—including family members—may offer relevant testimony on youthfulness, development, environment, impulsivity, susceptibility to peer influence, and other individualized characteristics bearing on diminished culpability. *Ellis*, 579 P.3d at 43-44. While the court was not obligated to sua sponte inquire into youth-related evidence or deliver a *Miller*-factor analysis applicable to juveniles, it was required to consider relevant information once the defendant requested mitigation. The court's categorical practice of hearing only from victims and law enforcement, and not the defendant's family, contravenes the court's requirement under the SRA to give meaningful consideration to the mitigating factors of youth as requested by Morales Perez.

The State responds that a defendant's family members are not entitled to address the court at sentencing, citing RCW 9.94A.500(1). While the statute mandates that certain persons shall be allowed to address the court during sentencing, the statute does not limit a court's discretion to hear from others. *State v. Hixson*, 94 Wn. App. 862, 866, 973 P.2d 496 (1999). Nothing in this statute precludes a defendant from presenting mitigating evidence.

The trial court was not required to apply juvenile constitutional procedures to young adult sentencing under the SRA. However, once Morales Perez requested consideration of youthfulness, the court was obligated to give meaningful consideration to that request and to consider relevant lay testimony proffered in support. The court's refusal to hear from Morales Perez's family was an abuse of discretion. Because the court failed to consider proffered lay testimony relevant to youthfulness after a proper request, the sentencing procedures were defective. *See Osman*, 157 Wn.2d at 481-82.

We reverse the sentence and remand for de novo resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, A.C.J.

I CONCUR:

_____
Murphy, J.

10

No. 40325-4-III

FEARING, J.P.T † — (concurring in-part/dissenting in-part) I concur in the majority's decision to remand to the superior court for resentencing with instructions to listen to testimony or comments from Horacio Morales Perez's family members. I disagree with the ruling of the majority that withdraws from the resentencing court an obligation to thoroughly, meaningfully, and on the record review and consider the *Miller* factors. *Miller v. Alabama*, 567 U.S. 460, 477-78, 489, 391 P.3d 409 (2012); *State v. Houston-Sconiers*, 188 Wn.2d 1, 20, 391 P.3d 409 (2017).

On page one of the opinion, the majority writes, "We reject his [Horacio Morales Perez's] invitation to expand the constitutional protections afforded juveniles to young adults sentenced under the Sentencing Reform Act (SRA), of 1987, ch. 9.94A RCW." The opinion, on that page, does not identify the entirety of the "special protections" sought by Perez and rejected by the majority. Later, however, the majority mentions the application of the *Miller* factors as one of the constitutional protections pursued by Perez. To the extent the majority rejects an obligation on the sentencing court to deliberate on the *Miller* factors, I disagree.

Because of the constitutional nature of youth, the United States Supreme Court, in *Miller v. Alabama*, 567 U.S. 460 (2012), mandated that a sentencer follow a process that incorporates consideration of the offender's age and its hallmark features of impulsivity

_____

† George B. Fearing, a retired judge of the Washington State Court of Appeals, is serving as a judge pro tempore of this court pursuant to RCW 2.06.150(1).

and immaturity and other mitigating features before imposing life without parole. The attended characteristics include, (1) chronological age, (2) immaturity, impetuosity, failure to appreciate risks and consequences, (3) the surrounding family and home environment, (4) the circumstances of the offense, (5) the extent of the offender's participation in the offense, (6) any pressures from friends or family affecting him, (7) the inability to deal with police officers and prosecutors, (8) incapacity to assist an attorney in his or her defense, and (9) the possibility of rehabilitation. *Miller v. Alabama*, 567 U.S. 460, 477-78, 489 (2012). Courts now call these characteristics "the *Miller* factors." Under the cruel and unusual punishment clause, sentencing courts must exercise their discretion at the time of sentencing regarding the youth of the offender, regardless of what opportunities for discretionary release may occur in the future. *Miller v. Alabama*, 567 U.S. 460, 477-83 (2012); *State v. Houston-Sconiers*, 188 Wn.2d 1, 20 (2017).

The Washington Supreme Court has ruled that Washington Constitution's article I, section 14 which prohibits cruel punishments, extends greater protection to offenders, including juvenile offenders. *State v. Bassett*, 192 Wn.2d 67, 79-80, 428 P.3d 343 (2018). Going further, in *State v. Houston-Sconiers*, 188 Wn.2d 1 (2017), the Washington Supreme Court addressed *Miller v. Alabama*'s applicability to juvenile defendants who receive lengthy sentences for crimes other than homicide. The Evergreen high court held that sentencing courts possess absolute discretion to depart as far as desired below the otherwise applicable SRA ranges when sentencing juveniles in adult court. Rendering sentences routinely imposed on adults will often be too harsh

when applied to youth. *State v. Houston-Sconiers*, 188 Wn.2d 1, 19 (2017). In *State v. Houston-Sconiers*, the Supreme Court wrote that, "Trial courts must consider mitigating qualities of youth at sentencing." *State v. Houston-Sconiers*, 188 Wn.2d 1, 21 (2017).

In *In re Personal Restraint of Monschke*, 197 Wn.2d 305, 313, 482 P.3d 276 (2021), the Washington Supreme Court extended the dictates of the *Miller* factors to young adults who were 18-, 19-, or 20-years old at the time of their offenses because of lack of full brain development until age 25. No meaningful development difference exists between a 17-year-old and an 18-year-old. The court rejected a bright line distinction between youth age 17 from youth age 18. Bright lines "fail to comply with the Eighth Amendment." *In re Personal Restraint of Monschke*, 197 Wn.2d 305, 317 (2021). *Monschke* comprised two distinct personal restraint petitions filed respectively by Dwayne Bartholomew and Kurtis Monschke, each convicted of aggravated first degree murder. Bartholomew was age 20 at the time of his crime. Monschke was age 19 at the time of his murder offense.

The law bases the special rules for juvenile sentencing on the science that a youth's brain does not fully develop until the age of 25. Thus, the purposes behind the special rules apply to an 18-year-old as much as a 17-year-old. Making a distinction between a youth at age 18 and one day from a youth age 17 and 364 days is arbitrary, if not capricious.

The growing body of longitudinal neuroimaging research has demonstrated that the brain continues to grow and change during adolescence, thereby modernizing

longstanding assumptions that the brain ceased maturing by puberty. Jay N. Giedd et al.,

*Brain Development during Childhood and Adolescence: A Longitudinal MRI Study*, 2

NATURE NEUROSCIENCE 861 (1999) https://www.nature.com/articles/nn1099_861.

The prefrontal cortex of the brain grows as a person matures from childhood to early

adulthood. The cortex is one of the last parts of the brain to develop completely. In

general, the prefrontal cortex does not fully mature until age 25, which prompts car

insurance companies to charge higher rates until a person turns 25 because those younger

are higher risk drivers. The prefrontal cortex assesses risk taking and decision making,

both important for driving. Tobias Grossmann, *The Role of Medial Prefrontal Cortex in*

*Early Social Cognition*, 7 FRONTIERS IN HUMAN NEUROSCIENCE 340 (2013),

https://www.frontiersin.org/journals/human-neuroscience/articles/10.3389/fnhum.2013

.00340/full.

 The majority writes that the Washington Supreme Court in *In re Personal*

*Restraint of Kennedy*, 200 Wn.2d 1, 513 P.3d 769 (2022) and *In re Personal Restraint of*

*Davis*, 200 Wn.2d 75, 514 P.3d 653 (2022), narrowed the teaching of *In re Personal*

*Restraint of Monschke*. The full extent of that narrowing remains to be seen. The court,

in both decisions, ruled that the one year personal restraint petition time bar precluded the

respective petitioners' request for resentencing. The court did not overrule *In re Personal*

*Restraint of Monschke*.

 In *State v. Nevarez*, 24 Wn. App. 2d 56, 519 P.3d 252 (2022), Division II of this

court directly answered the question of whether the sentencing court must consider the

youthfulness of an 18-year-old if the court sentences within the standard range. Two judges answered in the negative. Dissenting Judge Bradley A. Maxa answered in the affirmative. Judge Maxa's dissent assumes that the sentencing court will consider all the *Miller* factors when sentencing an 18-year-old.

Gabriel Nevarez, age 18, shot and killed a bystander while attempting to harm a third person, who had earlier threatened Nevarez. Nevarez hid in Mexico for 9 years before his extradition to Washington state. Nevarez and the State agreed to recommend to the sentencing court a sentence of 271 months, the low end of the standard range. Defense counsel did not ask for an exceptional sentence below the standard range and did not request the sentencing court to consider Nevarez's youth at the time of the killing. The sentencing court imposed a 307-month sentence. The sentencing court commented that she lacked any obligation to perform the *Houston-Sconiers* analysis, which employs the *Miller* factors. *State v. Houston-Sconiers*, 188 Wn.2d 1, 23-24 (2017).

On appeal, in *State v. Nevarez*, the majority affirmed the sentencing court's view that it possessed no obligation to consider Gabriel Nevarez's youth because Nevarez was 18-years-old and sentenced within the standard range. In doing so, the court of appeals relied on *State v. O'Dell*, 183 Wn.2d 680, 696, 358 P.3d 359 (2015), not *State v. Houston-Sconiers*. According to the court of appeals, *O'Dell* grants the sentencing court permission to consider the mitigating qualities of youth but does not compel the sentencing court to do so. The court of appeals also refused to follow *Monschke*, because

*Monschke* entailed a mandatory life without parole sentence and the sentencing court did not sentence Nevarez to life.

The majority's decision in *Stave v. Nevarez* demands a review of *State v. O'Dell*, 183 Wn.2d 680 (2015). O'Dell went to the Supreme Court because the sentencing court wished to sentence below the standard range but deemed it lacked authority to do so. At the age of 18, Sean O'Dell committed second degree rape. O'Dell failed to introduce, at the sentencing hearing, any evidence concerning how his youth impacted him at the time of the crime. On appeal, the State argued that the offender bears the burden of presenting evidence on the mitigating aspect of youthfulness. The Supreme Court agreed, but only to a limited extent. The Supreme Court ruled that the offender bears the burden of presenting evidence and persuading the sentencing court if the offender seeks an exceptional sentence below the standard range. The Supreme Court did not rule that the offender carries any burden to show the qualities of youth impacted his behavior. Nor did the Supreme Court rule that the sentencing court lacked an obligation to consider the offender's youth when sentencing an 18-year-old within the standard range.

In *State v. O'Dell*, the Supreme Court used language that supports the *Nevarez* majority and language that undermines the majority. On the one hand, the Supreme Court wrote that the differences in youth "*might* justify a trial court's finding that youth diminished a defendant's culpability." 183 Wn.2d 680, 693 (2015) (emphasis added). The "trial court must be *allowed to consider* youth as a mitigating factor when imposing a sentence on an" 18-year-old. 183 Wn.2d 680, 696 (2015) (emphasis added).

On the other hand, the Supreme Court concluded that the sentencing court committed error by failing to *meaningfully consider* youth as a possible mitigating factor. The court noted that, "in general," youth are less culpable of crime because of the inability to control emotions, identify consequences, and render reasoned decisions. 183 Wn.2d 680, 692 (2015). The failure to exercise discretion abuses discretion. The high court concluded that, on remand, "the trial court *will consider*, in light of this opinion, whether youth diminished O'Dell's' culpability." 183 Wn.2d 680, 697 (2015) (emphasis added).

I now return to *State v. Nevarez* and discuss the dissent. Unlike the majority, dissenting Judge Maxa reviewed *State v. Houston-Sconiers* and concluded that *Houston-Sconiers* requires sentencing courts to consider the mitigating qualities of youth when sentencing an 18-year-old. He relied on the quote I recited above, "trial courts must consider mitigating qualities of youth at sentencing." *State v. Houston-Sconiers*, 188 Wn.2d 1, 21 (2017). Astute Judge Maxa noted that, in another decision, the Supreme Court declared: "courts *must* take into account the differences between children and adults in criminal sentencing." *State v. Ramos*, 187 Wn.2d 420, 428, 387 P.3d 650 (2017) (emphasis added). "In order to comply with the Eighth Amendment, courts *must* consider the mitigating qualities of youth and have discretion to impose a proportional punishment based on those qualities." *In re Personal Restraint of Ali*, 196 Wn.2d 220, 225-26, 474 P.3d 507 (2020) (emphasis added).

In his dissent, Judge Maxa noted that an 18-year-old receives the same constitutional protection as those under the age of majority. The underlying theme of Washington Supreme Court law directs sentencing courts to meaningfully consider the mitigating qualities of the offender's youth regardless of the precise age of the offender. If this court wishes to uphold the policies and spirit of the Eighth Amendment and article I, section 14, this court must instruct sentencing courts to always meaningfully consider the *Miller* factors when sentencing offenders below 21-years of age, if not up to age 25.

_____
FEARING, J.P.T