**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 21, 2023

_Gonzáles, C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 21, 2023

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 100873-2 |
| Respondent, | EN BANC |
| v. | |
| MICHAEL SCOTT REYNOLDS, JR., | Filed: September 21, 2023 |
| Petitioner. | |

GORDON McCLOUD, J.—"[I]n the context of juvenile sentencing, article I, section 14 [of the Washington Constitution] provides greater protection than the Eighth Amendment." _State v. Bassett_, 192 Wn.2d 67, 82, 428 P.3d 343 (2017); U.S. CONST. amend. VIII. We have therefore ruled that article I, section 14 categorically bars imposition of a sentence of life in prison without possibility of parole on a juvenile—no matter how serious the crime—even though the Eighth Amendment permits this. _Bassett_, 192 Wn.2d at 72-73.

In this case, Michael Scott Reynolds Jr. received a mandatory sentence of life in prison without possibility of parole for a crime he committed at age 33. The events triggering that sentence, though, were his two prior convictions—or

*State v. Reynolds (Michael Scott, Jr.)*, No. 100873-2

"strikes" under our state's "three strikes"[1] law—one of which Reynolds committed at age 17, when he was a juvenile.

If Reynolds' current sentence constitutes punishment for his earlier offense committed at age 17, then it would be unconstitutional under *Bassett*. But under our recent precedent, his current sentence does not constitute punishment for that prior offense. In *State v. Moretti*, decided two years after *Bassett*, this court held that a "three strikes" sentence of mandatory life in prison without possibility of parole constitutes punishment for the last crime or third "strike," not the earlier first or second "strikes." 193 Wn.2d 809, 826, 446 P.3d 609 (2019). And for years, we have held that our state's "three strikes" law as applied to adults does not violate article I, section 14.[2] That assessment could certainly change over time. But in this case, the parties have not asked us to overrule it.

We therefore affirm the Court of Appeals.

FACTUAL AND PROCEDURAL HISTORY

Under Washington's Persistent Offender Accountability Act (POAA), an offender who commits three "most serious offense[s]" must be sentenced to life in

---

[1] Persistent Offender Accountability Act (or "three strikes" law), RCW 9.94A.570, of the Sentencing Reform Act of 1981, ch. 9.94A. RCW.

[2] *See, e.g., State v. Witherspoon*, 180 Wn.2d 875, 889, 329 P.3d 888 (2014); *State v. Magers*, 164 Wn.2d 174, 193, 189 P.3d 126 (2008) (plurality opinion); *State v. Manussier*, 129 Wn.2d 652, 677, 921 P.2d 473 (1996); *State v. Rivers*, 129 Wn.2d 697, 715, 921 P.2d 495 (1996).

prison without the possibility of parole. RCW 9.94A.030(37), .570. This "three strikes" law requires sentencing courts to count all prior adult convictions for "most serious offense[s]" as strikes. It explicitly bars sentencing courts from counting juvenile adjudications as strikes. RCW 9.94A.030(37), (34). But it does not bar sentencing courts from counting adult "most serious offense[s]"—even if the adult conviction resulted from a crime committed as a juvenile.

Following that law, after Reynolds was convicted of a "most serious offense" for a crime he committed at age 33, the sentencing court determined that it was his "third strike." As the following summary shows, the sentencing court's determination was correct under the three strikes statute.

First, on December 30, 2001, 17-year-old Reynolds tried to rob a gas station with a BB[3] gun. 3 Clerk's Papers (CP) at 360, 387-88. He was charged with first degree attempted robbery in juvenile court. *Id.* at 349. But the juvenile court declined jurisdiction, and the case was transferred to adult court, where Reynolds pleaded guilty as charged. *Id.* at 364, 398-99. This was Reynolds' first strike. *Id.* at 357.

Next, on January 1, 2006, 21-year-old Reynolds forcefully entered a couple's apartment and held them hostage while Reynolds and an accomplice tried to rob them. *Id.* at 314-15. Reynolds pleaded guilty to robbery in the first degree

---

[3] BB is a shot pellet 0.175 inch in diameter for use in a BB gun.

*State v. Reynolds* (*Michael Scott, Jr.*), No. 100873-2

and burglary in the first degree. *Id.* at 329-336. This was Reynolds' second strike. *Id.* at 333.

Finally, on February 20, 2018, 33-year-old Reynolds pulled a barista out of a coffee stand, dragged her to a nearby wooded area, and violently attempted to rape her at knifepoint. 1 CP at 3. A jury found him guilty of first degree burglary and second degree attempted rape. *Id.* at 243. This was Reynolds' third strike. *Id.* at 250.

Because this was Reynolds' third strike, the trial court determined that he was a persistent offender under RCW 9.94A.030 and sentenced him to life in prison without the possibility of parole (LWOP). 2 CP at 251.

Reynolds appealed. *Id.* at 253. He argued, among other things, that imposing a sentence of LWOP based in part on his prior conviction for a crime he committed as a juvenile violated state and federal constitutional protections against cruel or cruel and unusual punishments. *State v. Reynolds*, 21 Wn. App. 2d 179, 184, 505 P.3d 1174 (2022). The Court of Appeals affirmed. *Id.*

We granted review on the question of whether counting an adult conviction for a crime committed as a juvenile as a "strike" violates the United States or state constitutional protections against cruel or cruel and unusual punishment. Ord., *State v. Reynolds*, No. 100873-2 (Wash. 2022).

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Reynolds (Michael Scott, Jr.)*, No. 100873-2

STANDARD OF REVIEW

We review a statute's constitutionality de novo. *Kitsap County v. Mattress Outlet*, 153 Wn.2d 506, 509, 104 P.3d 1280 (2005) (plurality opinion); *Bassett*, 192 Wn.2d at 77. The cruel punishment clause in article I, section 14 of our state constitution is more protective than the Eighth Amendment of the federal constitution. *Id.* at 82. Reynolds raises both constitutional provisions, so we start with our more protective state clause. *See Moretti*, 193 Wn.2d at 819.

ANALYSIS

The POAA states that "a persistent offender shall be sentenced to a term of total confinement for life without the possibility of release." RCW 9.94A.570. The POAA defines "offender" as a person who has committed a felony and is 18 years of age or older or is less than 18 years of age but whose case has been transferred to adult court. RCW 9.94A.030(34). It then defines "persistent offender" as an "offender" whose current conviction is for "a most serious offense" and who has prior convictions of "most serious offenses" "on at least two separate occasions." RCW 9.94A.030(37).

Reynolds has now been convicted on three separate occasions as an "offender" for three "most serious offense[s]." He therefore fits within the POAA's definition of a "persistent offender." And he does not dispute that. *See* Suppl. Br. of Pet'r at 8-9.

*State v. Reynolds* (*Michael Scott, Jr.*), No. 100873-2

Reynolds argues, instead, that this statutory scheme is unconstitutional for allowing a trial court to use a conviction for a crime committed as a juvenile as a predicate for a later, adult, mandatory LWOP sentence. Specifically, he asserts that such a mandatory LWOP sentence violates the Eighth Amendment's bar on cruel and unusual punishment and the Washington Constitution's article I, section 14 bar on cruel punishment. He bases both of these arguments on the fact that he committed his first strike as a juvenile rather than as an adult. *Id.* at 9-10.

Reynolds' briefing, however, focuses only on the Washington Constitution. He argues that under *Bassett*, 192 Wn.2d 67, the state constitution categorically bars imposing an LWOP sentence on an offender who committed their first strike as a juvenile. Suppl. Br. of Pet'r at 14. In the alternative, he argues that his LWOP sentence is unconstitutionally disproportionate under *State v. Fain*, 94 Wn.2d 387, 617 P.2d 720 (1980). *Id.* at 21.

We address both of his arguments—the claim of unconstitutionality under our categorial *Bassett* analysis and the claim of unconstitutionality under our *Fain* proportionality analysis. But we do so with *Moretti*'s holding, that the current sentence punishes the current crime rather than the prior strikes, in mind. 193 Wn.2d at 826 ("The petitioners' argument depends on the assumption that these sentences punish them for crimes they committed as young adults. But these sentences are for the most serious offenses they committed at either age 32

6

*State v. Reynolds* (*Michael Scott, Jr.*), No. 100873-2

(Moretti) or age 41 (Nguyen and Orr), well into adulthood.").[4] We conclude that

Reynolds' sentence is constitutional under article I, section 14 of our state

constitution.

I.    Under the *Bassett* categorical bar inquiry, there is no national consensus or independent Washington bar against counting a defendant's prior conviction in adult court for a crime committed as a juvenile as a "strike"

Both the Eighth Amendment to the United States Constitution and article I,

section 14 of the Washington State Constitution categorically bar sentences that are

disproportionate to the crime of conviction and the culpability of the offender.

*Bassett*, 192 Wn.2d at 84 (citing *Graham v. Florida*, 560 U.S. 48, 59-62, 130 S. Ct.

2011, 176 L. Ed. 2d 825 (2010)).

In *Bassett*, we outlined one test that we can use to determine if a punishment

is disproportionate:  the categorical bar test.  We held that under article I, section

14 of our state constitution, we must address (1) whether there are "objective

indicia of a national consensus against the sentencing practice" and (2) whether our

independent judgment, based on controlling precedent and our understanding and

interpretation of the cruel punishment provision's text, history, and purpose,

---

[4] We also note that *Moretti*'s holding on this point is consistent with our prior precedent.  We have repeatedly held that habitual offender statutes like the POAA are "not cumulative punishment for prior crimes" but rather the "repetition of criminal conduct aggravates the guilt of the last conviction and justifies a heavier penalty for the crime." *State v. Lee*, 87 Wn.2d 932, 937, 558 P.2d 236 (1976); *State v. Le Pitre*, 54 Wash. 166, 168, 103 P. 27 (1909) (habitual offender statute does not violate double jeopardy principles but "merely provides an increased punishment for the last offense").

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

weighs against the sentencing practice. *Id*. at 83. "Th[is] categorical approach 'requires consideration of the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question' and whether the sentence 'serves legitimate penological goals.'" *Id*. at 83-84 (quoting *Graham*, 560 U.S. at 67).

### A. There is an emerging trend, but no "national consensus," against the sentencing practice at issue here

So the first step in the categorical bar analysis is to determine whether there is a national consensus against the sentencing practice at issue. Here, the sentencing practice at issue is counting the defendant's commission of a "strike" as a juvenile as a predicate "strike" supporting that defendant's later three strikes LWOP sentence. (The challenged practice involves only prior offenses committed as a juvenile but transferred to, and adjudicated in, adult court.)

We determine whether there is a national consensus by looking at the "'"objective indicia of society's standards, as expressed in legislative enactments and state practice."'" *Bassett*, 192 Wn.2d at 85 (quoting *Graham*, 560 U.S. at 61 (quoting *Roper v. Simmons*, 543 U.S. 551, 563, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005))). "'It is not so much the number of these States that is significant, but the consistency of the direction of change.'" *Id.* at 86 (quoting *Atkins v. Virginia*, 536 U.S. 304, 315, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002)).

State v. Reynolds (*Michael Scott, Jr.*), No. 100873-2

Reynolds argues that only 10 other states mandate LWOP for a third strike, even for adult offenses. Suppl. Br. of Pet'r at 17-18. Reynolds continues that in addition to those 10 states, 3 categorically bar the use of an offense that a defendant committed as a juvenile (whether or not it was transferred to adult court) for the purposes of counting strikes. *See infra* nn.6-8, at 11. As a result, Reynolds concludes that only 10 states would permit the same sentence he received in Washington. *Id.* at 17-18. The State, on the other hand, claims that "[a]pproximately 25 states impose mandatory LWOP upon a second, third or fourth conviction for a qualifying offense under some circumstances." Suppl. Br. of Resp't at 27. The State also provided a chart detailing each of those states' persistent offender sentencing schemes. *See id.*, App.

Both parties are, in their own way, correct. Persistent offender statutes across the country differ dramatically in the offenses they count, in the number of strikes they require, and in the situations LWOP must be imposed.[5] These

---

[5] A few examples of different states' persistent offender sentencing laws show how hard it is to compare one sentencing scheme to another. Delaware does not mandate LWOP for a final strike offense but rather mandates the "statutory maximum" for the final strike; only in some cases is that statutory maximum LWOP. DEL. CODE ANN. tit. 11, § 4214(c), (d), (e). Georgia mandates LWOP when a defendant commits a second serious violent felony and also when a defendant commits a fourth felony (not necessarily serious or violent) but only if the maximum for that fourth offense is LWOP. GA. CODE ANN. § 17-10-7. In California, an offender who has committed three enumerated felonies must serve life in prison—but that offender can become eligible for parole after 20 years (except in limited circumstances). CAL. PENAL CODE § 667.7(a)(1). In other words, these states all require LWOP in certain circumstances, but those circumstances vary greatly. Therefore, a direct comparison to Washington's POAA is difficult.

9

*State v. Reynolds* (*Michael Scott, Jr.*), No. 100873-2

differences make it difficult, if not impossible, to compare our state's POAA to those of other states.

What the parties do agree on is that fewer than half of the 50 states mandate LWOP after a defendant repeatedly commits serious offenses. And even fewer states mandate LWOP in the particular circumstances of Reynolds' case.

But at this point, this count does not constitute a national consensus against the practice of imposing a mandatory LWOP sentence on a defendant whose first "strike" resulted from a crime committed as a juvenile. The reason is that a minority of states mandate LWOP sentences even for persistent offenders with exclusively adult strikes. For the minority of states that do require LWOP for persistent offenders, there's no consensus on how or when it's appropriate.

This could all be considered an emerging trend against harsh "three strikes" laws in general. But we have not considered that a national consensus against "three strikes" laws in general. It necessarily follows that we cannot consider it a national consensus against "three strikes" laws predicated on prior crimes committed as a juvenile.

Reynolds does point to three states that categorically bar the use of any childhood offenses (whether convicted in adult or juvenile court) as strikes to show that there is a growing national consensus against the practice. Those states are

*State v. Reynolds* (*Michael Scott, Jr.*), No. 100873-2

New Mexico,[6] Kentucky,[7] and Illinois.[8] Suppl. Br. of Pet'r at 18. Illinois banned the use of offenses committed as a juvenile (even when convicted in adult court) as predicate strikes as recently as 2021. *Id.* Reynolds also argues that there is a national consensus "that children are constitutionally different from adults for purposes of sentencing" because "juveniles have diminished culpability and greater prospects for reform." *Miller v. Alabama*, 567 U.S. 460, 471, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012); *see also State v. Houston-Sconiers*, 188 Wn.2d 1, 8, 391 P.3d 409 (2017).

We agree with Reynolds that children are different from adults and that this difference has constitutional consequences for sentencing.[9] We also agree with Reynolds that three states bar the specific practice he attacks. We would even identify those three states' decisions as a small trend, considering the direction in which those states are moving.

---

[6] N.M. STAT. ANN. § 31-18-23(C) ("violent felony conviction incurred by a defendant before the defendant reaches the age of eighteen shall not count as a violent felony conviction" for purposes of three strikes law).

[7] KY. REV. STAT. ANN. § 532.080(3)(b) (cannot count previous offense as a strike unless offender committed that offense when they were 18 or older; cannot convict an offender as a persistent offender unless they are more than 21 years of age).

[8] ILL. COMP. STAT. 5/5-4.5-95(a)(4)(E) (first offense must be committed "when the person was 21 years of age or older.").

[9] *Miller*, 567 U.S. at 480; *Houston-Sconiers*, 188 Wn.2d at 9.

*State v. Reynolds* (*Michael Scott, Jr.*), No. 100873-2

But it is far from a national consensus. And to the extent there are a greater number of states that bar the use of a prior juvenile adjudication in juvenile court at a later sentencing hearing, our state is on board with that trend. The state legislature already prohibits sentencing courts from counting a prior juvenile adjudication in juvenile court as a strike offense. *Moretti*, 193 Wn.2d at 821 (citing RCW 9.94A.030(35)). And the legislature recently prohibited sentencing courts from counting prior juvenile adjudications in juvenile court as part of "criminal history" calculations in SRA[10] sentencing for non-POAA crimes. ENGROSSED H.B. 1324, 68th Leg., Reg. Sess. (Wash. 2023).

In sum, we find no national consensus against the particular sentencing practice at issue in Reynolds' case.

But, while the showing of a national consensus is entitled to great weight, it is "'not itself determinative'" of whether a punishment is cruel. *Moretti*, 193 Wn.2d at 823 (quoting *Graham*, 560 U.S. at 67). Under *Bassett*, we must still exercise our independent judgment based on state precedent, goals, history, and values.

---

[10] Sentencing Reform Act of 1981, ch. 9.94A RCW.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

> B. *Under our independent judgment, Reynolds' sentence is not*
> *categorically cruel punishment*

The second part of *Bassett*'s categorical bar analysis requires this court to

exercise our own independent judgment. We consider the "'culpability of the

offenders at issue in light of their crimes and characteristics, along with the

severity of the punishment in question'" and "'whether the challenged sentencing

practice serves legitimate penological goals.'" 192 Wn.2d at 87 (quoting *Graham*,

560 U.S. at 67). The four recognized "legitimate penological goals" are retribution,

deterrence, incapacitation, and rehabilitation. *Id.*

> i. Reynolds' culpability in light of his crimes and characteristics
> compared to the severity of his POAA punishment

Reynolds argues that "in light of children's reduced culpability, mandatory

sentencing statutes must be interpreted as discretionary for children, and life

without parole may not be imposed upon them even for the worst crimes." Suppl.

Br. of Resp't at 19.

We agree. But as discussed above, *Moretti* holds that this court cannot

consider Reynolds' culpability at the time he committed his first strike offense.

193 Wn.2d at 826. *Moretti* requires us to consider the culpability of the 33-year-

old Reynolds when he committed his most recent, third strike offense. *Id.* ("The

petitioners' argument depends on the assumption that these sentences punish them

for crimes they committed as young adults. But these sentences are for the most

13

serious offenses they committed at either age 32 (Moretti) or age 41 (Nguyen and Orr), well into adulthood.").

To be sure, the question presented in *Moretti* was whether a sentencing court could count prior convictions of "most serious" offenses or strikes that the defendant committed as a young adult, not a juvenile. And the question presented in this case is whether a sentencing court can count prior convictions of "most serious" offenses or strikes that the defendant committed as a juvenile (whose guilt was determined in adult court).

But *Moretti* retained our court's traditional means of analyzing whether a sentence for a particular crime violates article I, section 14, and that analysis applies just as much to Reynolds' claim as it did to Moretti's claim. That analysis is that "'[t]he repetition of criminal conduct aggravates the guilt *of the last conviction* and justifies a heavier penalty for the crime.'" *Id.* at 826 (quoting *State v. Lee*, 87 Wn.2d 932, 937, 558 P.2d 236 (1976)); *see also id.* at 824 (defendant must show that "youth contributed to the commission of the *instant* offenses" (emphasis added)).

*Moretti* denied relief because Moretti "made no showing that the factors that lessen the culpability of juveniles apply to offenders well into adulthood." *Id.* at 826. Applying that analysis here, Reynolds makes no showing on that point, either.

ii.      Whether the sentence serves legitimate penological goals

Next, as to the penological goals of the sentence, Reynolds argues that children's diminished culpability reduces the case for retribution and that children are less likely to be deterred by the prospect of severe consequences. Suppl. Br. of Pet'r at 19. Additionally, he argues that a standard SRA sentence better suits the goals of incapacitation and rehabilitation because it provides a possibility of release and therefore the motivation to rehabilitate. *Id.* at 19-20.

This requires us to analyze the penological goals of retribution, deterrence, and incapacitation. Reynolds committed or attempted three violent offenses over the course of his life and was convicted of two most serious offenses in the current adult matter now before this court. Retribution is justified because the "people of Washington are entitled to condemn adults who chose to commit serious crimes after having twice been given a chance to reform themselves." *Moretti*, 193 Wn.2d at 827. The main purposes of the POAA are "deterrence of criminals who commit three 'most serious offenses' and the segregation of those criminals from the rest of society." *State v. Rivers*, 129 Wn.2d 697, 713, 921 P.2d 495 (1996) (quoting *State v. Thorne*, 129 Wn.2d 736, 775, 921 P.2d 514 (1996), *abrogated on other grounds by Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004))). Those purposes seem to be satisfied by Reynolds' sentence for his two current crimes of conviction.

15

Therefore, based on our independent judgment looking at Reynolds'
culpability and the penological justifications of the POAA, Reynolds' sentence is
not categorically unconstitutional under article I, section 14 of our state
constitution.

II.   Under the *Fain* proportionality inquiry, Reynolds' sentence is not
      unconstitutionally disproportionate to his sentence

We can also use another test to determine whether a sentence is
unconstitutionally cruel under article I, section 14:  the *Fain* proportionality test.
Under this test, courts ask whether the sentence is grossly disproportionate to the
crime based on four factors: "(1) the nature of the offense; (2) the legislative
purpose behind the habitual criminal statute; (3) the punishment defendant would
have received in other jurisdictions for the same offense; and (4) the punishment
meted out for other offenses in the same jurisdiction." *Fain*, 94 Wn.2d at 397
(citing *Hart v. Coiner*, 483 F.2d 136, 140-43 (4th Cir. 1973); *State v. Gibson*, 16
Wn. App. 119, 125-26, 553 P.2d 131 (1976)). Again, we have stated that "our
proportionality review focuses on the nature of the current offense, not the nature
of past offenses." *Moretti*, 193 Wn.2d at 832.

Reynolds argues that his sentence was disproportionate under a combination
of the *Fain* factors. He argues that childhood strike offenses are significantly less
blameworthy than adult strike offenses. Suppl Br. of Pet'r at 23. And he argues that
a typical SRA sentence would better serve the goals of deterrence and

16

rehabilitation. *Id*. at 23-24. Additionally, he argues that it would increase public trust in our criminal justice system to bar sentencing courts from imposing LWOP on defendants based even in part on criminal conduct that they committed as a child. *Id.*

He makes valid policy arguments. But we cannot disturb his sentence for the adult crime at issue here based on disagreement with legislative policy choices. We can determine only whether the legislative policy choices violate the constitution. In this case, our precedent compels us to answer that they do not.

First, the nature of the offenses that Reynolds committed were first degree burglary and attempted second degree rape. Reynolds forcefully dragged a barista out of her workplace and violently attempted to rape her at knifepoint. 3 Verbatim Report of Proceedings (Nov. 20, 2019) at 1028-30. These are violent, serious crimes, comparable to those committed by the offenders in *Moretti*. *See* 193 Wn.2d at 831 (one defendant beat a man with a bat in order to rob him, one stabbed a woman ten times, and one swung a metal pipe at a man's head). In addition, both second degree attempted rape and first degree burglary carry maximum sentences of life. RCW 9A.28.020; RCW 9A.44.050; RCW 9A.52.020; RCW 9A.20.021. And Reynolds was 33 years old when he committed this offense; thus, he did not have the reduced culpability of a child. This factor shows no constitutional disproportionality between the sentence and the crimes of conviction.

*State v. Reynolds* (*Michael Scott, Jr.*), No. 100873-2

The second factor is the legislative purpose behind the POAA. "We have previously recognized that the purpose of the POAA is to deter criminals who commit three most serious offenses and to incapacitate them by segregating them from the rest of society." *Moretti*, 193 Wn.2d at 832. Another purpose of the POAA is to increase the punishment of any offender who is convicted in adult court of a most serious offense. The POAA already bars counting prior juvenile adjudications as strikes for purposes of the POAA. *See* RCW 9.94A.030(37), (34) ("offender" does not include a juvenile whose case was retained by juvenile court). The legislature clearly drew a distinction between a prior offense that was committed as a juvenile and tried in juvenile court and a prior offense that was committed as a juvenile but declined to adult court. *See C.J.C. v. Corp. of Cath. Bishop of Yakima*, 138 Wn.2d 699, 713, 985 P.2d 262 (1999) (plurality opinion) (specifically including or excluding class of people shows legislative intent for how the act should apply). This factor shows no unconstitutional disproportionality between the sentence and the crime.

The third factor is the punishment that Reynolds would receive in other jurisdictions. Similar to the national consensus prong of the categorical test, Reynolds argues that in only 10 other jurisdictions would he have received an LWOP sentence. Suppl. Br. of Pet'r at 24-25. As discussed above, other states' persistent offender statutes vary dramatically from each other and from

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Washington's POAA. They all have different prerequisites to imposition of a mandatory or discretionary LWOP sentence. We addressed how to consider such a confusing array of statutes in *Moretti*: "[b]ecause each state has a different threshold for what qualifies as a strike offense, it is unclear exactly how each of the petitioners would have fared in other jurisdictions." 193 Wn.2d at 833. Therefore, this factor is inconclusive. But "this factor alone is not dispositive." *State v. Witherspoon*, 180 Wn.2d 875, 888, 329 P.3d 888 (2014).

The fourth factor is the punishment that Reynolds would have received for a different crime in the same jurisdiction. Reynolds argues that no other law permits LWOP for childhood conduct and that "even children who commit multiple aggravated murders may not be condemned to die in prison in Washington." Suppl. Br. of Pet'r at 25 (citing *Bassett*, 192 Wn.2d at 90). Additionally, "[m]andatory life in prison without the possibility of parole is the harshest sentence currently available in Washington." *Moretti*, 193 Wn.2d at 833.

Once again, Reynolds' statements on these points are accurate. But they do not support his main point, that is, that he would not have received the same sentence for comparable offenses in Washington. Actually, he would have received the same sentence for any comparable "most serious" offense in Washington: under the POAA, all adult offenders convicted of three "most serious offenses" are sentenced to LWOP. *Id.* at 834 ("These petitioners would have

19

*State v. Reynolds* (*Michael Scott, Jr.*), No. 100873-2

received the same sentence if they had committed any other most serious offenses. This final factor supports the constitutionality of these sentences."). This factor shows no unconstitutional disproportionality between the sentence and the crime, either.

Therefore, Reynolds' sentence is not unconstitutional under article I, section 14 based on the four *Fain* factors.

CONCLUSION

Reynolds is correct that "'children are different'" and that an offender's status as a juvenile mitigates that juvenile's culpability. *See, e.g.*, *Houston-Sconiers*, 188 Wn.2d at 8 (quoting *Miller*, 567 U.S. at 480); *State v. O'Dell*, 183 Wn.2d 680, 695-96, 358 P.3d 359 (2015); *State v. Ramos*, 187 Wn.2d 420, 428, 387 P.3d 650 (2017).

But Reynolds is not a juvenile and he was not sentenced to LWOP for a crime that he committed as a juvenile. He was sentenced to LWOP for first degree burglary and attempted second degree rape, which he committed at age 33. His previous criminal conduct aggravates his sentence, but under recent, controlling precedent, his punishment is for his adult conduct.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Reynolds* (*Michael Scott, Jr.*), No. 100873-2

We therefore hold that Reynolds' sentence is not unconstitutional under article I, section 14 or the Eighth Amendment.[11] We affirm the Court of Appeals.

_____
Gordon McCloud, J.

WE CONCUR:

_____
González, C.J.

_____
Stephens, J.

_____
Johnson, J.

_____
Madsen, J.

_____
Owens, J.

---

[11] Since we conclude that Reynolds' claim fails under our more protective state constitutional provision, we do not separately discuss his Eighth Amendment claim. *See Moretti*, 193 Wn.2d at 819.

21

*State v. Reynolds*, No. 100873-2
Whitener, J., dissenting

No. 100873-2

WHITENER, J. (dissenting)— A juvenile charged and sentenced in adult court does not magically become an adult because of the venue in which the case is resolved. This case brings to us a novel issue—whether it is constitutional under article I, section 14 of the Washington Constitution for sentencing courts to automatically weigh juvenile strikes[1] the same as adult strikes for the purpose of imposing a mandatory life in prison without the possibility of parole (LWOP) sentence under the Persistent Offender Accountability Act (POAA), RCW 9.94A.570. It is foregone that in the context of juvenile sentencing, our state constitution's cruel punishment clause provides greater protection than the Eighth Amendment to the United States Constitution. *In re Pers. Restraint of Monschke*, 197 Wn.2d 305, 311 n.6, 482 P.3d 276 (2021) (plurality opinion) (citing *State v. Bassett*, 192 Wn.2d 67, 78, 428 P.3d 343 (2018)); *Bassett*, 192 Wn.2d at 82. Washington jurisprudence acknowledges that children are different. Therefore, I cannot agree with the majority that using juvenile strikes to impose a mandatory LWOP sentence under the POAA is constitutional.

---

[1] I use the term "juvenile strike" to mean a strike committed by a juvenile that is adjudicated in adult court.

1

*State v. Reynolds*, No. 100873-2
Whitener, J., dissenting

ANALYSIS

I.      A juvenile's age, and not the court in which a juvenile's case is adjudicated, should drive this court's analysis

Children are different[2] and age matters.[3] In this case, Reynolds was 17 when he committed his first strike offense, first degree attempted robbery. He was 17 when he was charged, 17 when he pleaded guilty, and 17 when he was sentenced. Reynolds was a juvenile, and remained a juvenile, when he was charged and sentenced as an adult in superior court for his first strike offense.

The majority is correct, the POAA "explicitly bars sentencing courts from counting juvenile adjudications as strikes. RCW 9.94A.030(37), (34). But it does not bar sentencing courts from counting adult "most serious offense[s]"—even if the adult conviction resulted from a crime committed as a juvenile." Majority at 3. The POAA was codified in 1994 into Washington's Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW. At that time, the distinction between a juvenile adjudication

---

[2] *Miller v. Alabama*, 567 U.S. 460, 481, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

[3] *Roper v. Simmons*, 543 U.S. 551, 570, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005) (abolished the juvenile death penalty); *Graham v. Florida*, 560 U.S. 48, 69, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (abolished life without parole categorically for juveniles in non-homicide cases); *Miller*, 567 U.S. at 481 (no mandatory sentences for juveniles in a homicide case); *Montgomery v. Louisiana*, 577 U.S. 190, 195, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016) (quoting *Miller*, 567 U.S. at 479) (courts must "consider a child's 'diminished culpability and heightened capacity for change' before condemning him or her to die in prison").

2

*State v. Reynolds*, No. 100873-2
Whitener, J., dissenting

in juvenile court and a juvenile conviction in adult court reflected the legislature's

attitude toward juvenile sentencing.

Since the POAA was codified, the laws in Washington State regarding

juvenile sentencing have evolved, partly in response to advancements in brain

science. Under *Monschke*, "neurological science recognizes no meaningful

distinction between 17- and 18-year-olds as a class," therefore, "no meaningful

developmental difference exists between the brain of a 17-year-old and the brain of

an 18-year-old." 197 Wn.2d at 321 (italics and capitalization omitted). Necessarily

then, there is no meaningful developmental difference between the brains of two 17-

year-old juveniles regardless of the venue in which their case is decided. If "we have

already concluded that under the Sentencing Reform Act of 1981 … 'age may well

mitigate a defendant's culpability, even if that defendant is over the age of 18,'" we

necessarily concede that age may well mitigate a defendant's culpability if they are

under 18. *Id.* (citing *State v. O'Dell*, 183 Wn.2d 680, 695, 358 P.3d 359 (2015)). A

juvenile's "lack of maturity and responsibility, their vulnerability to negative

influences, and their transitory and developing character" are traits that are

inherently tied to a juvenile's age and do not simply vanish if a juvenile's case is

transferred to adult court. *Id.* (citing *Roper v. Simmons*, 543 U.S. 551, 569-70, 125

S. Ct. 1183, 161 L. Ed. 2d 1 (2005)).

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Reynolds*, No. 100873-2
Whitener, J., dissenting

Our state's juvenile jurisprudence is rapidly evolving and today requires sentencing courts to consider the mitigating circumstances associated with the youth of any juvenile defendant. *See State v. Anderson*, 200 Wn.2d 266, 285, 516 P.3d 1213 (2022) ("'[C]hildren are different' from adults, so 'our criminal justice system [must] address this difference when punishing children' by imposing adult sentences." (alterations in original) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Ali*, 196 Wn.2d 220, 225, 474 P.3d 507 (2020)); *Monschke*, 197 Wn.2d at 311 ("That state constitutional bar against 'cruel punishment,' like the Eighth Amendment bar against 'cruel and unusual punishments,' … further requires courts to exercise 'complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant,' even when faced with mandatory statutory language."); *Ali*, 196 Wn.2d at 237 ("We concluded that 'the Eighth Amendment to the United States Constitution compels us to recognize that children are different' and 'courts must address those differences in order to comply with the Eighth Amendment[ ] with discretion to consider the mitigating qualities of youth.' We reached this conclusion based on rules stemming from *Roper*, *Graham*,[4] and *Miller*,[5] which we identified as 'substantive rules'" (alteration in original) (citation omitted) (quoting *State v. Houston-Sconiers*, 188 Wn.2d 1, 18-19, 391 P.3d

---

[4] *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).
[5] *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

4

*State v. Reynolds*, No. 100873-2
Whitener, J., dissenting

409 (2017)); *Bassett*, 192 Wn.2d at 81 ("This court has consistently applied the

*Miller* principle that 'children are different.' *Miller*, 567 U.S. at 481. … This court

has also applied *Miller*'s reasoning to hold that 'sentencing courts must have

complete discretion to consider mitigating circumstances associated with the youth

of any juvenile defendant' and 'must have discretion to impose any sentence below

the otherwise applicable [SRA] range and/or sentence enhancements.'" (quoting

*Houston-Sconiers*, 188 Wn.2d at 21)); *Houston-Sconiers*, 188 Wn. 2d at 21 ("In

accordance with *Miller*, we hold that sentencing courts must have complete

discretion to consider mitigating circumstances associated with the youth of any

juvenile defendant, even in the adult criminal justice system, regardless of whether

the juvenile is there following a decline hearing or not. To the extent our state

statutes have been interpreted to bar such discretion with regard to juveniles, they

are overruled. Trial courts must consider mitigating qualities of youth at sentencing

and must have discretion to impose any sentence below the otherwise applicable

SRA range and/or sentence enhancements." (footnote omitted)); *O'Dell*, 183 Wn.2d

at 691-92 ("The legislature has determined that all defendants 18 and over are, in

general, equally culpable for equivalent crimes. But it could not have considered the

particular vulnerabilities—for example, impulsivity, poor judgment, and

susceptibility to outside influences—of specific individuals. The trial court is in the

best position to consider those factors…. [W]hen the legislature enacted RCW

5

*State v. Reynolds*, No. 100873-2
Whitener, J., dissenting

9.94A.030(34), it did not have the benefit of psychological and neurological studies showing that the 'parts of the brain involved in behavior control' continue to develop well into a person's 20s." (emphasis, footnote, and internal quotation marks omitted) (quoting *Miller*, 567 U.S. at 472)).

Clearly, for his first strike offense, Reynolds has not received the benefit of our current juvenile jurisprudence that mandates consideration of mitigating qualities of youth coupled with a trial court's discretion to impose any sentence below the SRA range. Nor could Reynolds have received the benefit of recent Washington legislation enacted to reform policies regarding juveniles. Starting in 2018, the Washington Legislature made changes to the laws regarding prosecuting juveniles as adults for felony crimes, as well as placement of juveniles who were convicted of adult felonies. *See* RCW 13.40.110; RCW 72.01.410. In enacting these changes, the legislature made its intent clear:

> The legislature recognizes state and national efforts to reform policies that incarcerate youth and young adults in the adult criminal justice system. *The legislature acknowledges that transferring youth and young adults to the adult criminal justice system is not effective in reducing future criminal behavior.* Youth and young adults incarcerated in the adult criminal justice system are more likely to recidivate than their counterparts housed in juvenile facilities.

LAWS OF 2019, ch. 322, § 1 (emphasis added).

This court's juvenile jurisprudence acknowledges age and analyzes the attendant youthful qualities of juveniles that may lessen their culpability. Yet the

6

*State v. Reynolds*, No. 100873-2
Whitener, J., dissenting

majority surprisingly relies on the outdated distinction between a juvenile

adjudication in juvenile court and a juvenile conviction in adult court to try to

identify cases that fall outside *Miller*'s scope. This distinction does not comport with

our current juvenile jurisprudence.[6]

Similar to other areas of law, our current juvenile jurisprudence builds on the

evolving standards of decency[7] in sentencing juveniles. The POAA was enacted

before *Miller*'s guiding principle that "children are different." The POAA could not

have contemplated nor could it have addressed the issue this case presents—whether

it is constitutional under article I, section 14 for sentencing courts to automatically

weigh juvenile strikes the same as adult strikes for the purpose of imposing a

---

[6] The POAA and RCW 9.94A.030(34), enacted almost three decades ago and before the development of juvenile brain science, create a bright statutory line that results in two classes of juveniles: those under 18 whose cases remained in juvenile court and those under 18 whose cases were transferred to superior court. This distinction is outdated. We now know that a juvenile's age may impact their level of culpability, regardless of the venue in which their case is resolved. Therefore, "sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant, *even in the adult criminal justice system*." *Houston-Sconiers*, 188 Wn.2d at 21 (emphasis added).

[7] One example of the evolving standards of decency can be seen in the regard of the intellectually disabled (which *Atkins* outdatedly refers to as "mentally retarded") and their reduced culpability. *Atkins v. Virginia*, 536 U.S. 304, 315, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002). *Atkins* is analogous to our cases that describe the evolving standards of decency regarding juveniles and their reduced culpability. A poignant example of evolving standards of decency is the shift towards using the term "intellectual disability" instead of the term "mentally retarded." *See* https://www.federalregister.gov/documents/2013/08/01/2013-18552/change-in-terminology-mental-retardation-to-intellectual-disability [https://perma.cc/MPH9-9J8K]; https://www.wrightslaw.com/blog/changing-terms-mentally-retarded-to-cognitive-disability/ [https://perma.cc/2N74-AAFP]; https://www.govtrack.us/congress/bills/111/s2781 [https://perma.cc/AB3N-73B4].

*State v. Reynolds*, No. 100873-2
Whitener, J., dissenting

mandatory LWOP sentence under the POAA. In the context of our current juvenile jurisprudence, Reynolds' age at the time he was convicted of his juvenile strike offense, not the venue in which he was convicted, matters.

The majority fails to answer the issue of first impression granted for review by this court. Its reliance on *Moretti* fails to acknowledge that this is the very issue *Moretti* left to be answered.[8] "In *State v. Moretti*, decided two years after *Bassett*, this court held that a 'three strikes' sentence of mandatory life in prison without possibility of parole constitutes punishment for the last crime or third 'strike,' not the earlier first or second 'strikes.' Majority at 2. However, a crucial distinction between Reynolds' case and *Moretti* is that Reynolds committed his first strike offense as a juvenile, whereas the *Moretti* defendants each committed all their strike offenses as adults. The majority states that "*Moretti* requires us to consider the culpability of the 33-year-old Reynolds when he committed his most recent, third strike offense." *Id*. at 13. This would be true if Reynolds, like the defendants in *Moretti*, committed all of his strike offenses as an adult. But that is not this case. The majority errs in its reliance on *Moretti* because *Moretti* never intended to address the issue presently before this court.

---

[8] *Moretti* expressly left open the issue at the heart of this case: "whether it is constitutional to apply the POAA to an offender who committed a strike offense as a juvenile and was convicted in adult court." *State v. Moretti*, 193 Wn.2d 809, 821 n.5, 446 P.3d 609 (2019).

8

*State v. Reynolds*, No. 100873-2
Whitener, J., dissenting

Again, the issue here is whether it is constitutional under article I, section 14 for sentencing courts to automatically weigh juvenile strikes the same as adult strikes for the purpose of imposing a mandatory LWOP sentence under the POAA. Reynolds' culpability at the time he committed his juvenile strike is the heart of the issue we are now asked to answer.

II.     The broad lens of Washington's juvenile jurisprudence

    A.     This court may, but will not necessarily, look to the legislature when determining what constitutes cruel punishment

We review a statute's constitutionality under a de novo standard of review. *State v. Hunley*, 175 Wn. 2d 901, 908, 287 P.3d 584 (2012) (citing *City of Bothell v. Barnhart*, 172 Wn.2d 223, 229, 257 P.3d 648 (2011)). We presume a statute is constitutional and that the burden is on the challenger to prove otherwise beyond a reasonable doubt. *Id.* We have clarified, however, that the "beyond a reasonable doubt" standard in this context "is not an evidentiary standard but a reflection of 'respect for the legislature.'" *Quinn v. State*, __ Wn.3d __, 526 P.3d 1, 12 n.9 (2023) (quoting *Sch. Dists.' All. for Adequate Funding of Special Educ. v. State*, 170 Wn.2d 599, 606, 244 P.3d 1 (2010)).

Respect for legislative decisions may not always align with our evolving standards of decency, especially with regard to determining whether a statute

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

violates constitutional bans on cruel punishment.[9] This is such a case. The POAA

and RCW 9.94A.030(34), enacted almost three decades ago and before the

development of juvenile brain science, create a bright statutory line that results in

two classes of juveniles: those under 18 whose cases were adjudicated in juvenile

court and those under 18 whose cases were transferred to superior court. This

statutory bright line was drawn long before our standard of decency with regard to

juvenile sentencing began to evolve and that has since compelled this court to uphold

the premise that children are different, that a juvenile's age matters, and that a

juvenile's culpability is to be analyzed and weighed differently from adults.

In 1994, the POAA's intent was to offer a simple sentencing practice and to

emphasize tougher sentencing as a way to reduce recidivism. The POAA was never

meant to address the nuances in juvenile sentencing that both the legislature and our

court's juvenile jurisprudence have since addressed. The legislative intent behind

the POAA was as follows:

> (2) By sentencing three-time, most serious offenders to prison for life
> without the possibility of parole, the people intend to:
>
> (a) Improve public safety by placing the most dangerous criminals in
> prison.

---

[9] In *Monschke*, we stated that "some bright statutory lines fail to comply with the Eighth Amendment" and necessarily fail to comply with article I, section 14, which is more protective than the Eighth Amendment. 197 Wn.2d at 317, 311 n.6.

*State v. Reynolds*, No. 100873-2
Whitener, J., dissenting

> (b) Reduce the number of serious, repeat offenders by tougher sentencing.

> (c) Set proper and simplified sentencing practices that both the victims and persistent offenders can understand.

> (d) Restore public trust in our criminal justice system by directly involving the people in the process.

RCW 9.94A.555.

Starting in 2018, the legislature updated two juvenile laws relevant to this case: RCW 13.40.110, which governs how and when a juvenile court declines jurisdiction and transfers it to adult court, and RCW 72.01.410, which governs the type of facility a person under the age of 18 is placed in when they are convicted as an adult for a felony offense. The changes were meant to reflect the following legislative intent:

> The legislature recognizes state and national efforts to reform policies that incarcerate youth and young adults in the adult criminal justice system. *The legislature acknowledges that transferring youth and young adults to the adult criminal justice system is not effective in reducing future criminal behavior.* Youth and young adults incarcerated in the adult criminal justice system are more likely to recidivate than their counterparts housed in juvenile facilities.

LAWS OF 2019, ch. 322, § 1 (emphasis added).

Our state legislature, in making these changes, fell in line with federal legislation and "[took] advantage of recent changes made by congress during the reauthorization of the juvenile justice and delinquency prevention act by the juvenile justice reform act of 2018…." LAWS OF 2019, ch. 322, § 1. Notably, the federal

11

*State v. Reynolds*, No. 100873-2
Whitener, J., dissenting

Juvenile Justice Reform Act of 2018, which inspired our legislature to revise the above juvenile law statutes, added, "as a new purpose area, support for a continuum of evidence-based or promising programs that are trauma-informed, *reflect the science of adolescent development*, and are designed to meet the needs of at-risk youth who come into contact with the juvenile justice system." H.R. 6964, 115th Cong. §101 (2018) (as passed by House, Sept. 28, 2018) (emphasis added) https://www.congress.gov/bill/115th-congress/house-bill/6964.

Reynolds' case is before us with several years' worth of our juvenile jurisprudence and relevant changes in legislation preceding it. When bright *statutory* lines drawn by the legislature do not comply with article I, section 14, we have appropriately held, "Clearly, bright *constitutional* lines in the cruel punishment context shift over time in order to accord with the 'evolving standards of decency that mark the progress of a maturing society.'" *Monschke*, 197 Wn.2d at 317 (emphasis added) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958) (plurality opinion)).

B.     Our decision must flow straightforwardly from our juvenile law precedent

The majority's reliance on *Moretti* is misguided. *Moretti* remains the law for persistent offenders who committed all three strike offenses in adulthood, but it does not answer the juvenile law question at issue in this case. The majority relies on

12

*State v. Reynolds*, No. 100873-2
Whitener, J., dissenting

Reynolds' third strike conviction, which occurred when he was an adult, to conclude that *Moretti*'s holding governs this case, but the majority does not address the juvenile law issue that Reynolds' juvenile strike conviction presents. Under our current juvenile jurisprudence, you do not get to three strikes by using a juvenile strike unless the trial court at sentencing gave meaningful consideration of the mitigating qualities of youth and had discretion to impose any sentence below the otherwise applicable SRA range and/or sentence enhancements. We now know that children are different and are to be treated as such.

> 1. Where our existing juvenile jurisprudence is the controlling precedent, the categorical bar test and the *Fain*[10] disproportionality test are inapplicable

The categorical bar test and the *Fain* disproportionality test are applied "to determine when a particular punishment is categorically cruel in violation of article I, section 14 *in the first place.*" *Id*. at 312 (emphasis added) (citing *Bassett*, 192 Wn.2d at 83). In the context of a juvenile strike offense however, we are not starting from the "first place." Our court's juvenile jurisprudence has already established that crimes committed by juveniles must be analyzed with respect to their age and must be analyzed differently from the same crimes committed by adults. *See supra* pp. 3-5. As in *Monschke,* where our decision "'flow[ed] straightforwardly from our

---

[10] *State v. Fain*, 94 Wn.2d 387, 397, 617 P.2d 720 (1980).

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Reynolds*, No. 100873-2
Whitener, J., dissenting

precedents'" such that "[n]o *Fain* [disproportionality analysis] or categorical bar analysis [was] necessary to reach [that] decision," our decision here should flow straightforwardly from our present and evolving juvenile law jurisprudence. 197 Wn.2d at 326-28 (quoting *Miller*, 567 U.S. at 483). The categorical bar test and the *Fain* disproportionality test are inapplicable.

We do not need to analyze the categorical bar test's national consensus prong because the national consensus regarding juvenile sentencing has already been decided, and the takeaway is children are to be treated differently. First, the sentencing practice at issue before this court is whether a court should use a *juvenile* strike that was adjudicated in adult court to impose a mandatory LWOP sentence under the POAA. Second, the ultimate conclusion reached by the majority that the "national consensus" prong is not helpful in this context is correct. "[W]hile the showing of a national consensus is entitled to great weight, it is 'not determinative' of whether a punishment is cruel." Majority at 12 (citing *Moretti*, 193 Wn.2d at 823).

Our court's juvenile jurisprudence and our independent judgment regarding juvenile law is clear—children are different and a juvenile's age matters. Therefore, neither prong of the categorical bar test needs to be analyzed.

14

*State v. Reynolds*, No. 100873-2
Whitener, J., dissenting

>        2.    Similarly, in this case, the *Fain* disproportionality test is
>              inadequate

Under the disproportionality test,[11] we examine the four *Fain* factors: "(1) the

nature of the offense; (2) the legislative purpose behind the … statute; (3) the

punishment defendant would have received in other jurisdictions for the same

offense; and (4) the punishment meted out for other offenses in the same

jurisdiction." 94 Wn.2d at 397.

The nature of the offense in this case is Reynolds' juvenile strike offense,

which is the strike offense that raises the juvenile law issue on which we granted

review. The majority's focus on Reynolds' third strike offense, which he committed

as an adult, fails to answer the nuanced issue before us. *See* majority at 17-18.

The legislative purpose behind the POAA was conceived almost 30 years ago,

prior to our evolving juvenile jurisprudence that acknowledges that children are

different and their age matters at sentencing, regardless of the venue in which their

case is held. *See Houston-Sconiers*, 188 Wn.2d at 18-19. Yet, the majority

emphasizes the legislative purpose behind the POAA and endorses the distinction

---

[11] In *Bassett*, we held the *Fain* disproportionality test was not appropriate in reaching our holding that imposing an LWOP sentence on 16- and 17-year-olds violated article I, section 14 because the disproportionality test "does not include significant consideration of the characteristics of the offender class" and does not consider "the culpability of the offenders … in light of their crimes and characteristics." *Bassett*, 192 Wn.2d at 83, 87. Furthermore, the *Fain* disproportionality test "does not advance an analysis of a claim that challenges 'a particular type of sentence as it applies to an entire class of offenders who have committed a range of crimes.'" *Id.* at 84 (quoting *Graham*, 560 U.S. at 61).

15

*State v. Reynolds*, No. 100873-2
Whitener, J., dissenting

between juveniles whose cases remained in juvenile court and juveniles whose cases were transferred to adult court. *See* majority at 18.

As to the third and fourth *Fain* factors, I agree with the majority that a national consensus on using juvenile strikes to impose mandatory LWOP sentences is "difficult, if not impossible" because "[p]ersistent offender statutes across the country differ dramatically in the offenses they count, in the number of strikes they require, and in the situations LWOP must be imposed." *Id*. at 9-10. When looking to other jurisdictions is not helpful in our analysis, we should hold strong to our juvenile jurisprudence that clearly states children are different[12] and their age matters at sentencing regardless of the venue in which their case is held.  See *Anderson*, 200 Wn.2d at 285; *Monschke*, 197 Wn.2d at 311; *Ali*, 196 Wn.2d at 237; *Bassett*, 192 Wn.2d at 81; *Houston-Sconiers*, 188 Wn.2d at 21; *O'Dell*, 183 Wn.2d at 691.

CONCLUSION

Reynolds was 17, a juvenile, when he was charged and sentenced in adult court with a strike offense. At no time during the disposition of his juvenile strike offense did he become an adult. Reynolds' case is best understood as being a part of our evolving line of juvenile law cases espousing the principle that children are different and their age matters at sentencing. Regardless of when or what venue

---

[12] *Miller*, 567 U.S. at 481.

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Reynolds*, No. 100873-2
Whitener, J., dissenting

Reynolds' sentencing occurred, his juvenile strike should be analyzed differently from an adult strike. Our juvenile jurisprudence requires us to hold that it is unconstitutional under article I, section 14 for sentencing courts to automatically weigh juvenile strikes the same as adult strikes for the purpose of imposing a mandatory LWOP sentence under the POAA. In the end, Reynolds may not receive much benefit from our evolving juvenile jurisprudence, but it requires he be given the opportunity to have a meaningful sentencing—a sentencing that takes into consideration his age at the time he committed his juvenile strike offense.

I would reverse the Court of Appeals with instructions to remand to the trial court for a sentencing in line with our court's juvenile sentencing jurisprudence.

Whitener, J.

Yu, J.

Montoya-Lewis, J.

17