IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40477-3-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LYNDA DIANE FRY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

STAAB, C.J. — The legislature amended the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, in 2023 to exclude most juvenile convictions from the calculation of a defendant's offender score.

The State now appeals Lynda Fry's sentence, arguing the sentencing court erred by excluding Fry's prior juvenile convictions from her offender score because she committed her current offense before the amendment became effective. Fry does not challenge the State's position. Rather, she argues this court should affirm because using juvenile criminal history to calculate offender scores is cruel punishment violative of Washington's Constitution, article I, section 14. The State replies that Fry's argument has been rejected by Washington courts and the authority she relies on is inapposite.

We reverse and remand for resentencing.

BACKGROUND

Lynda Fry assaulted a law enforcement officer on April 27, 2023. She was 38 years old at the time.

Fry was sentenced on May 10, 2024. Her criminal history included thirteen prior convictions, seven of which were juvenile adjudications. At sentencing, the court heard argument from the parties regarding whether a recent amendment to the SRA applied to Fry's sentence. The amendment became effective July 23, 2023, and precludes most juvenile adjudications from being counted when calculating an offender score. LAWS OF 2023, ch. 415, § 2; s*ee* RCW 9.94A.525(1)(b).

The court noted its understanding that criminal defendants are "generally . . . sentenced under the law that's in effect at the time of the offense." Rep. of Proc. (RP) at 10. It further opined that the legislature "could have made this retroactive, but I have to believe based on my prior experience that the reasons why they chose not to make it retroactive, because we don't want these to count, is simply to avoid the administrative catastrophe that would happen if we had to resentence every single juvenile—or every single person who had a juvenile offense counted." RP at 11.

The court concluded it would not consider Fry's juvenile convictions in the calculation of her offender score. It rejected the State's proposed calculation of 9+, determined Fry's correct offender score was 6, and sentenced her within the corresponding standard range.

The State appeals.

ANALYSIS

The State contends the court erred by retroactively applying an SRA amendment to calculate Fry's offender score without her juvenile convictions. Fry does not challenge this assertion. Instead, she argues this court should affirm her sentence because the use of juvenile criminal history to calculate offender scores is cruel punishment. The State replies, arguing that sentencing Fry based on the law in effect on the date of the crime is neither cruel nor unfair. We agree with the State.

We review a trial court's sentencing and calculation of offender scores under statutory authority de novo. *See State v. Pleasant*, 148 Wn. App. 408, 411, 200 P.3d 722 (2009). Statutes are presumed to apply prospectively unless the legislature indicates otherwise. *State v. Brake*, 15 Wn. App. 2d 740, 744, 476 P.3d 1094 (2020). A sentencing court applies the law in effect when the offender commits the offense, unless the statute reads to the contrary. *State v. Jenks*, 197 Wn.2d 708, 715, 719, 487 P.3d 482 (2021). Similarly, the saving clause provides that statutory amendments do not alter the punishment for offenses committed under prior law unless the new law expressly states otherwise. RCW 10.01.040; *State v. Solomon Gibson*, 33 Wn. App. 2d 618, 621, 563 P.3d 1079 (2025).

RCW 9.94A.525 governs the calculation of offender scores. The legislature amended RCW 9.94A.525(1) to its current reading in 2023. LAWS OF 2023, ch. 415, § 2. RCW 9.94A.525(1)(b) now provides that "adjudications of guilt pursuant to Title 13 RCW [the juvenile justice code] which are not murder in the first or second degree or

3

class A felony sex offenses may not be included in the offender score." This amendment became effective on July 23, 2023, and does not apply retroactively to offenses committed before its effective date. *See* LAWS OF 2023, ch. 415, § 2; *Solomon Gibson*, 33 Wn. App. 2d at 622-23.

Here, Fry committed an assault on April 27, 2023. When Fry committed the assault, earlier juvenile adjudications were included in the offender score calculation under former RCW 9.94A.525(1) (2021). *State v. Tester*, 30 Wn. App. 2d 650, 652, 546 P.3d 94 (2024). Because Fry committed the offense before the 2023 amendment became effective and because the amendment does not apply retroactively, Fry's earlier adjudications should have been counted in her offender score. The trial court erred by failing to apply the SRA as it existed at the time of the offense.

Fry argues that she should not be resentenced under the prior law because including juvenile convictions in her offender score is cruel punishment violative of Washington Constitution article I, section 14. She applies the categorical bar analysis used in *State v. Bassett*[1] to support her position.

Our state constitution prohibits "cruel punishment." WASH. CONST. art. I, § 14. Generally, claims of cruel punishment are analyzed by applying the *Fain*[2] proportionality test or the categorical bar analysis. *Bassett*, 192 Wn.2d at 83. "While *Fain* is the traditional test, it has been used for claims that a sentence was grossly disproportionate,

---

[1] 192 Wn.2d 67, 428 P.3d 343 (2018).
[2] *State v. Fain*, 94 Wn.2d 387, 617 P.2d 720 (1980).

not that a sentence was categorically unconstitutional." *Id.* at 82-83. The categorical bar analysis, on the other hand, is applied when a defendant "asserts a categorical challenge based on the characteristics of the offender class." *Id.* at 83.

"The categorical bar analysis considers (1) whether there is objective indicia of a national consensus against the sentencing practice at issue and (2) the court's own independent judgment based on 'the standards elaborated by controlling precedents and by the [c]ourt's own understanding and interpretation of the [cruel punishment provision]'s text, history, . . . and purpose.'" *Id.* (alterations in original) (internal quotation marks omitted) (quoting *Graham v. Florida*, 560 U.S. 48, 61, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010)).

Fry concedes she cannot demonstrate a national consensus against using juvenile convictions to calculate a defendant's offender score. Nevertheless, she argues this first step of the analysis is not dispositive and the second step weighs in her favor.

"The second step in the categorical bar analysis, the judicial exercise of independent judgment, requires consideration of 'the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question' and 'whether the challenged sentencing practice serves legitimate penological goals.'" *Bassett*, 192 Wn.2d at 87 (quoting *Graham*, 560 U.S. at 67).

We recognize four legitimate penological goals: "retribution, deterrence, incapacitation, and rehabilitation." *Id.* at 88. The *Bassett* court considered whether sentencing a juvenile to life in prison without parole served any of the four goals and

concluded it did not. *Id*. Fry asks us to apply *Bassett's* reasoning verbatim here.

However, Fry does not assert a categorical challenge based on the youth of the offender.

Indeed, Fry was not a child when she committed the assault—she was 38 years old.

Instead, Fry challenges the statute's application to the class of adult offenders with

juvenile convictions. Thus, *Bassett's* analysis of penological goals vis-à-vis juvenile

defendants is inapposite.

Nevertheless, Fry parrots *Bassett*, arguing that retribution relates to one's

"blameworthiness," which applies less to children because children have diminished

culpability. *Id*. Similarly, an immature child is unlikely to consider and be deterred by a

potential punishment. *Id*. Fry argues that children are less criminally culpable than

adults, yet the previous statutory scheme allows an adult to be punished heavily for

crimes committed as a child.

We find Fry's argument unpersuasive. Her sentence is not for a juvenile

adjudication, but for her current adult offense. *See State v. Reynolds*, 2 Wn.3d 195, 208,

535 P.3d 427 (2023) (the court considers the culpability of the defendant when he or she

committed the most recent offense). Fry does not argue that youth contributed to the

commission of the instant crime. And it is well settled that "an offense committed by a

repeat offender is often thought to reflect greater culpability and thus to merit greater

punishment. . . . [A] second or subsequent offense is often regarded as more serious

because it portends greater future danger and therefore warrants an increased sentence for

purposes of deterrence and incapacitation." *United States v. Rodriquez*, 553 U.S. 377, 385, 128 S. Ct. 1783, 170 L. Ed. 2d 719 (2008).

Therefore, based on our independent judgment considering Fry's culpability as an adult offender and the penological justifications, we conclude Fry's re-sentencing is not categorically unconstitutional under article I, section 14 of our state constitution.

Remand for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Cooney, J.