**FILED**
**JUNE 13, 2024**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39441-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MICHAEL RANDALL LAUDERDALE | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — In 1995, a jury found Michael Lauderdale guilty of aggravated first degree murder and first degree felony murder, and sentenced him to life without parole (LWOP). Mr. Lauderdale was 19 years old at the time of the offense conduct. In 2021, his case was remanded by our Supreme Court to the trial court for resentencing to consider the mitigating factors of youth in light of *In re Personal Restraint of Monschke*. 197 Wn.2d 305, 482 P.3d 276 (2021) (plurality opinion). On resentencing, the trial court reimposed Mr. Lauderdale's LWOP sentence. We affirm.

## FACTS[1]

In 1994, then 19-year-old Michael Lauderdale killed Jeremy Wood by assaulting him with a baseball bat. Forensic evidence indicated Mr. Lauderdale also bound Mr. Woods's legs and sexually assaulted Mr. Wood's deceased body. A jury convicted Mr. Lauderdale of aggravated first degree murder and first degree felony murder. He received a sentence of LWOP. In 2019, Mr. Lauderdale moved for resentencing, alleging a double jeopardy violation. The State conceded the violation. The trial court then vacated the felony murder conviction and Mr. Lauderdale was resentenced to LWOP, as it was required to do at the time.

Mr. Lauderdale appealed the LWOP sentence, arguing the trial court had the discretion, but failed to recognize it, to impose a sentence below life in prison based on the mitigating characteristics of youth. We rejected Mr. Lauderdale's argument on appeal. *See State v. Lauderdale*, No. 37141-7-III, (Wash. Ct. App. Dec. 24, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/371417_2_ord.pdf. The Supreme Court accepted

---

[1] The transcript from Mr. Lauderdale's 1995 trial is unavailable. Unless otherwise noted, we draw our factual recitation from this court's prior decisions. *See State v. Lauderdale*, No. 37141-7-III, (Wash. Ct. App. Dec. 24, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/371417_2_ord.pdf; *State v. Lauderdale*, noted at 83 Wn. App. 1023 (1996).

review only on the sentencing issue and immediately remanded the case to the trial court for resentencing in light of *Monschke*, which held that Washington's constitutional prohibition of mandatory LWOP sentences extends to youthful offenders aged 18 to 20. Ruling Granting Rev., *State v. Lauderdale*, No. 99591-5 (Wash. Sept. 1, 2021).

On remand, Mr. Lauderdale's attorney submitted a voluminous mitigation packet, including a detailed family history, psychological evaluation report, risk assessment report from the Department of Corrections, and various certificates of achievement and training earned by Mr. Lauderdale while incarcerated.

A resentencing hearing was held on October 20, 2022. The trial court listened to statements from several of Mr. Wood's family members and friends. The parties then presented their recommendations. The State argued that, under *Monschke*, the court "must give meaningful consideration to [Mr.] Lauderdale's youthfulness at the time he committed the crime." Rep. of Proc. (RP) (Oct. 20 ,2022) at 30. Nevertheless, the State asked the court to reimpose the LWOP sentence based on the facts of the case, seriousness of the crime, and Mr. Lauderdale's continued lack of remorse. *Id.* at 31-33. Mr. Lauderdale asked for a 30-year sentence, which would essentially amount to time served. During his allocution, Mr. Lauderdale stated he was ashamed of what he had

done, but was focused on changing himself for the better. *Id.* at 45-48. The court then took the matter under advisement.

The trial court reconvened on November 3, 2022. At that hearing, the court referenced the applicable case law, including *Monschke*. The court read from *State v. Ramos*, 187 Wn.2d 420, 387 P.3d 650 (2017), identifying the factors relevant to determining whether an offender's culpability was impacted by the mitigating factors of youth. RP (Nov. 3, 2022) at 58-59.

The court detailed the information set forth in Mr. Lauderdale's mitigation packet. It acknowledged Mr. Lauderdale had a traumatic childhood and lack of impulse control as a juvenile. *Id*. at 60-62. The court also noted Mr. Lauderdale had largely stayed out of trouble in prison and maintained employment and engagement in prison programming. *Id*. at 62-63.

The court then turned to the details of Mr. Lauderdale's offense conduct. The crime against Mr. Wood showed calculation and planning. It "was not an impulsive act." *Id*. at 69. And, although Mr. Lauderdale had taken responsibility for some of his conduct, he had never admitted to binding Mr. Wood's legs or sexually assaulting Mr. Wood. *Id.* at 65, 71. There was no evidence Mr. Lauderdale's conduct was prompted by peer or family pressure. *Id.* at 67. And after completion of the crime, Mr. Lauderdale attempted

to get rid of evidence connecting him to the murder, thus exhibiting not only consciousness of guilt but an awareness of consequences. *Id.* at 70-71.

In terms of Mr. Lauderdale's circumstances at the time of the offense conduct, the trial court explained Mr. Lauderdale was living as an adult. He was no longer in his abusive childhood home. He was employed and had obtained independent housing and his GED (general educational diploma). *Id.* at 67. "[Mr. Lauderdale] had control over his own environment at the time that he committed this crime." *Id.* at 70. After his arrest, Mr. Lauderdale demonstrated he was capable of working with counsel and assisting with his defense. *Id.* at 67.

The trial court recited the various purposes of punishment under the Sentencing Reform Act of 1981, chapter 9.94A RCW, including proportionality, respect for law, community protection, "retribution, deterrence, incapacitation, and rehabilitation." *Id.* at 71-72. The court then determined the original LWOP sentence remained appropriate for Mr. Lauderdale. *Id.* at 72. The court subsequently conformed its oral decision to written findings. Clerk's Papers at 176-82.

Mr. Lauderdale has filed a timely appeal.

ANALYSIS

Mr. Lauderdale's first argument on appeal is that the Washington Constitution requires a categorical bar on LWOP for defendants aged 20 and under. Mr. Lauderdale cites to *State v. Bassett*, 192 Wn.2d 67, 428 P.3d 343 (2018), which adopted a categorical bar for juveniles under age 18. According to Mr. Lauderdale, the court's decision in *Monschke* dictates that a categorical bar must also apply to young adults aged 18 to 20.

We disagree with Mr. Lauderdale's assessment of *Monschke*. The lead opinion in *Monschke* "was careful to note it was not concluding that LWOP is categorically barred for young adults and was therefore not announcing a decision similar to *State v. Bassett*." *In re Pers. Restraint of Kennedy*, 200 Wn.2d 1, 23, 513 P.3d 769 (2022). The *Monschke* lead opinion specifically recognized that "[n]ot every 19- and 20-year-old will exhibit . . . mitigating characteristics" warranting leniency. 197 Wn.2d at 326. Accordingly, *Monschke* affords trial courts discretion to assess the propriety of an LWOP sentence on an individual basis. This court has repeatedly rebuffed invitations to extend *Monschke*'s ruling. *See State v. Krueger*, 26 Wn. App. 2d 549, 555-56, 540 P.3d 126 (2023), *review denied*, ___ Wn.2d ___, 547 P.3d 900 (2024).

Consistent with *Monschke*, we hold sentencing courts retain discretion to impose LWOP sentences on youthful adult offenders. To the extent Mr. Lauderdale believes

*Bassett* must be expanded to include youthful offenders, that must be resolved by our Supreme Court.

Mr. Lauderdale also argues the trial court abused its discretion at resentencing by focusing on the facts of the offense and retribution instead of taking a forward-looking approach focused on rehabilitation. In support of this argument, Mr. Lauderdale cites *State v. Haag*, 198 Wn.2d 309, 495 P.3d 241 (2021).[2]

Mr. Lauderdale's reliance on *Haag* is misplaced. *Haag* involved a juvenile resentencing under former RCW 10.95.030(3) (2015) and former RCW 10.95.035 (2015). Former RCW 10.95.030(3)(b) set forth the following process for imposing a sentence for aggravated first degree murder on a defendant under age 18:

> [T]he court must take into account mitigating factors that account for the diminished culpability of youth as provided in *Miller v. Alabama*, [567 U.S. 460,] 132 S. Ct. 2455[, 183 L. Ed. 2d 407] (2012) including, but not limited to, the age of the individual, the youth's childhood and life experience, the degree of responsibility the youth was capable of exercising, and the youth's chances of becoming rehabilitated.[3]

*Haag* noted that this statutory language does not include a "any reference to retributive factors." 198 Wn.2d at 322. Given the statutory text, the Supreme Court reasoned that

---

[2] Mr. Lauderdale also complains the trial court improperly relied on facts outside the record and did not reconstruct the 1995 trial transcript. These contentions were not preserved in the trial court and therefore will not be reviewed on appeal. *See* RAP 2.5(a).

[3] This same provision is now found in RCW 10.95.030(2)(b).

"the legislature intended sentencers to focus on mitigating factors, with retribution playing a minor role." *Id*. According to the *Haag* court, this means the sentencing hearing "must be forward looking, not backward looking." *Id*. at 322-23.

Because Mr. Lauderdale was nearly 19 years and 8 months old at the time of his offense conduct, his 2022 resentencing did not fall under former RCW 10.95.030(3)(b). Rather, as recognized by the trial court at the time of resentencing, Mr. Lauderdale's sentencing was governed by the nonstatutory, constitutional factors set forth in *Ramos*.

As explained in *Ramos*, when assessing the constitutionality of an LWOP sentence on a youthful offender, a trial court "must meaningfully consider how juveniles are different from adults." 187 Wn.2d at 434-35. "If the [young person] proves by a preponderance of the evidence that his or her crimes reflect transient immaturity, substantial and compelling reasons would necessarily justify an exceptional sentence below" LWOP. *Id*. at 435. A court assessing the constitutionality of an LWOP sentence during a resentencing hearing may consider evidence of a defendant's postsentencing rehabilitative efforts. *Id*. at 449. However, it is not required to consider such evidence. *Id*.

The resentencing court here complied with the procedure set forth in *Ramos*. The court gave meaningful consideration to Mr. Lauderdale's mitigation evidence. It recognized Mr. Lauderdale had a traumatic childhood. It also recognized he had done

a lot to rehabilitate himself during his time in prison. But the court determined that at the time of the offense Mr. Lauderdale was exhibiting adult conduct and behavior. His offense conduct did not reflect transient immaturity. Thus, the court was not constitutionally prohibited from imposing a sentence of LWOP.

## CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Staab, A.C.J.

_____
Cooney, J.

9